IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD WOOD, an individual,<br><br>                    Plaintiff,<br><br>   v.<br><br>KINETIC SYSTEMS, INC., a California corporation,<br><br>                    Defendant. | Case No. CV 09-579-S-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Defendant Kinetic Systems, Inc.'s ("Kinetic") Motion to Dismiss, brought under Fed. R. Civ. P. 12(b)(2) and 12(b)(3), or in the alternative to transfer venue of this action to the United States District Court for the Northern District of California under 28 U.S.C. §§ 1631 and/or 1406(a). (Docket No. 5.) The parties have filed their briefing on the motion and the matter is ripe for the Court's consideration. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be aided significantly by oral argument, the motions will be decided on the record

before this Court without oral argument. Dist. Idaho Loc. Civ. R. 7.1.

I.  **Factual and Procedural Background**[1]

Kinetic is a contractor that designs and installs mechanical systems for companies in the electronics, biopharmaceutical, and healthcare industries. Kinetic is incorporated in the state of California and had its headquarters located in California from 1973 through mid-2006. (Decl. of Escover ¶ 3, Docket No. 7.) It continues to maintain its largest office in Fremont, California, but moved its corporate headquarters to Durham, North Carolina, in 2006. (Decl. of Escover ¶ 3, Docket No. 7.) Kinetic maintains other offices in Arizona and Oregon. (Decl. of Escover ¶ 14, Docket No. 7.)

Kinetic hired Mr. Wood as its Regional Labor Manager on or about November 4, 2003, pursuant to the terms outlined in a letter agreement that Kinetic mailed to Mr. Wood at his home in Idaho. (Wood Aff. ¶ 4, Ex. A, Docket No. 8; Decl. of Koontz ¶ 6, Docket No. 10.)[2] While Mr. Wood resided in Idaho throughout the time of his employment and Kinetic regarded Idaho as Mr. Wood's "report to work" location, Mr. Wood traveled extensively throughout the United States to Kinetic's various project locations. (Wood Aff. ¶¶ 9-10, Docket No. 8-1.)

Kinetic provided Mr. Wood with office equipment so that he could work from his home, and regularly communicated with him via a cellular and a land-line telephone, e-

---

[1] Both parties agree upon the facts as stated herein, unless otherwise noted.

[2] Mr. Wood worked for Kinetic since 1988 in various capacities and in various states, but his employment was terminated while he was employed as Kinetic's Regional Labor Manager. (Decl. of Koontz ¶¶ 4–6, 12.)

**MEMORANDUM DECISION AND ORDER - 2**

mail, and written correspondence. (Wood Aff. ¶¶6–8.) Kinetic paid for Mr. Wood's cellular telephone, and reimbursed him for his land-line telephone expenses. (Wood Aff. Ex. A.; Decl. of Escover ¶¶ 3, 6.) Because Kinetic considered Idaho Mr. Wood's "report to work" location, it paid Mr. Wood's union dues to his local union located in Meridian, Idaho, and paid his unemployment insurance premiums to the State of Idaho. (Wood Aff. ¶¶11–14.) However, if Mr. Wood was working at a jobsite in a state other than Idaho for an extended period of time, Kinetic would pay unemployment taxes to the state in which he was assigned, even though it was proper for Mr. Wood to file for unemployment benefits in Idaho. (Decl. of Koontz ¶¶ 10–11, Docket No. 10.)

Although Kinetic does not maintain an office staffed by employees in Idaho, it is authorized by the Secretary of State to transact business in the State of Idaho, and is currently registered to do so. (Aff. of Counsel ¶¶5–8, Exs. D–G, Docket No. 8-2.) Kinetic also was registered as a contractor with the Idaho Bureau of Occupational Licenses under Registration RCE-19514 until December 11, 2009, when its registration expired. (Aff. of Counsel ¶ 10, Ex. H.) Kinetic maintains a registered agent for service of process in the State of Idaho as well. (Aff. of Counsel ¶¶ 7–9, Ex. E.)

Kinetic's website advertises its services, and includes a list of clients located in Idaho with whom it has done business that includes Micron, Novellus Systems, Inc., and American Microsystems, Inc. (Aff. of Counsel ¶¶ 12–13, Ex. J.) Kinetic also markets its services to Idaho companies on its website. (Aff. of Counsel ¶ 12, Ex. J; Decl. of Escover ¶ 7, Docket No. 11.) Kinetic, however, claims that it has not performed any work for

**MEMORANDUM DECISION AND ORDER - 3**

Micron since 1988, provided minimal services for American Microsystems, Inc., denies working for Novellus, and asserts that it last performed work in Idaho at least seven years ago.  (Decl. of Koontz ¶¶ 5–6, Docket No. 10; Decl. of Escover ¶ 7, Docket No. 11.) Kinetic also asserts that while Mr. Wood was employed as its Regional Labor Manager, Mr. Wood did not perform any general duties while in Idaho, and Kinetic did not have any work being performed in Idaho.  (Decl. of Koontz ¶ 8, Docket No. 10.)

Kinetic terminated Mr. Wood's employment on January 20, 2009, for a purported safety violation while working at a jobsite in Arizona.  (Compl. ¶ 26; Decl. of Koontz ¶ 12.)  Mr. Wood claims that Kinetic employed him as a non-exempt, hourly employee, and that he was entitled to overtime pay for which he was not paid during his employment as Kinetic's Regional Labor Manager.  He also claims that Kinetic did not pay him for his accrued but unused vacation time.

Mr. Wood's complaint seeks damages in the form of unpaid wages under Idaho's wage claim statute, Idaho Code § 45-607, as well as under the Fair Labor Standards Act, Title 29 U.S.C. Chapter 8, § 207 ("FLSA").[3]  (Compl., Docket No. 1-3.)  Mr. Wood filed his complaint in Idaho state court on October 8, 2009, and the case was removed to this Court on November 10, 2009.  (Docket No. 1.)  Jurisdiction is claimed on the basis of diversity of citizenship as well as federal subject matter by virtue of the FLSA claim. (*Id.*)

---

[3]  Mr. Wood also claims damages for breach of contract, defamation and emotional distress.

**MEMORANDUM DECISION AND ORDER - 4**

## II. Discussion

### A. Personal Jurisdiction

#### 1. Standard of Review

In response to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proof of demonstrating that jurisdiction is appropriate. *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). The plaintiff "need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). The Court must take the plaintiff's uncontroverted allegations as true and conflicts between the parties over statements in affidavits are resolved in plaintiff's favor. *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

Where, as here, there is no federal statute governing personal jurisdiction, the law of the state in which the Court sits applies. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Under Idaho law, a court may exercise jurisdiction over an out-of-state defendant where: (1) the act giving rise to the cause of action falls within Idaho's long-arm statute, and (2) the constitutional standards of due process are met. *Smalley v. Kaiser*, 950 P.2d 1248, 1251 (Idaho 1997). Idaho Code § 5-514(a) permits the Court to exercise jurisdiction over any person or company that transacts business within Idaho or accomplishes or attempts to accomplish, transact or enhance the business purpose or objective of such person or company. Idaho's long-arm statute permits courts to assert personal jurisdiction to the same extent permitted by the Due Process Clause of the Constitution, and courts are only required to decide whether

**MEMORANDUM DECISION AND ORDER - 5**

asserting personal jurisdiction complies with due process under Idaho law. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987).

Federal due process requires that a nonresident defendant have minimum contacts with the forum state of such a nature that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S.310, 316 (1945). This constitutional test may be satisfied by showing that (1) the defendant has "substantial" or "continuous and systematic" contacts with the forum state, or (2) there is a strong relationship between the defendant's forum contacts and the cause of action. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986). The former is known as "general" jurisdiction and the latter as "specific" jurisdiction. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).

### 2. General Jurisdiction

General jurisdiction exists where there are "substantial" or "continuous and systematic" contacts with the forum state, even if the cause of action is unrelated to those contacts. *Gator.Com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1076 (9th Cir. 2003). The standard for establishing general jurisdiction is "fairly high," because the contacts with the forum state must be "of a sort that 'approximate physical presence.'" *Gator.Com Corp.*, 341 F.3d at 1776 (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984)); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Factors to be taken into consideration are whether the defendant makes sales,

**MEMORANDUM DECISION AND ORDER - 6**

solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there. *Bancroft & Masters, Inc.*, 223 F.3d at 1086.

Mr. Wood contends general jurisdiction is appropriate in this case because Kinetic has a long history of doing business in Idaho for Idaho companies such as Micron. Mr. Wood does not, however, identify any specific dealings by Kinetic with Micron or other Idaho companies, only that Kinetic identifies several Idaho companies on its website with whom it had done business with over the years. Mr. Wood also contends that Kinetic markets its services in Idaho on its website, employs an Idaho resident, and is authorized to transact business in Idaho as a contracting company.

The Court finds that such contacts do not rise to the elevated level required for a finding of "continuous and systematic" contacts required by the Supreme Court in *Helicopteros Nactionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). *Nonpareil Corp. v. Reddy Raw, Inc.*, No. CV 07-253-E-EJL, 2008 WL 711037 *3 (Dist. Idaho March 14, 2008). Kinetic's website is passive and merely markets its services to Idaho residents without allowing purchases. Kinetic has performed work for less than a handful of Idaho companies over the course of several years, but does not currently work for any Idaho company. The contacts outlined by Mr. Wood may demonstrate that Kinetic has done business with Idaho companies, but fail to establish a prima facie case that Kinetic is doing business in Idaho on a systematic, pervasive basis necessary to support a finding of general jurisdiction. *See Helicopteros*, 466 U.S. at 418 (finding no general jurisdiction in Texas over a

helicopter transportation company that purchased 80 percent of its helicopters, spare parts and accessories from Texas sources over a four year period).

The ability to perform work in Idaho by virtue of a Certificate of Authority, current registration to transact business in Idaho, and an Idaho contractor's registration number also does not rise to the level of "substantial" or "continuous and systematic" activities in Idaho. Merely "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Bancroft & Masters*, 223 F.3d at 1086 (citing *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986), which held that occasional sales to California residents were insufficient to create general jurisdiction). Nor is the employment of one Idaho resident sufficient to tip the scales in favor of asserting general jurisdiction in this case. *Cf. Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.3d 1240, 1242 (9th Cir. 1984) (noting that "no court has ever held that the maintenance of even a substantial sales force within the state is a sufficient contact to assert jurisdiction in an unrelated cause of action").

Therefore, the Court will determine if specific jurisdiction exists over Kinetic.

### 3. Specific Jurisdiction

The Ninth Circuit uses the following three-factor test to determine whether a court has specific jurisdiction over a nonresident defendant: "(1) the nonresident defendant must do some act or consummate some transaction with the forum state or perform some act by which it *purposefully avails* itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protection of its laws; (2) the claim must

*arise out of* or result from the defendant's forum-related activity; and (3) the exercise of jurisdiction must be *reasonable*." *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1188-89 (9th Cir. 2002) (emphasis added) (citing *Brand v. Menelove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986)).

Generally, specific jurisdiction cannot be established unless the plaintiff meets its burden of satisfying the first two requirements. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff satisfies the first two requirements, the burden shifts to the defendant to show that the court's exercise of jurisdiction would not be reasonable. *Id*. The Ninth Circuit has taken a flexible approach in determining specific jurisdiction by holding that it "can be established with a lesser showing of minimum contacts where considerations of reasonableness dictate." *Ochoa*, 287 F.3d at 1189 n.2 (citing *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986)).

### i. Purposeful Availment Requirement

Although courts generally use the phrase "purposeful availment" to include both purposeful availment and direction, the Ninth Circuit recognizes availment and direction as two distinct concepts. *Schwarzenegger*, 374 F.3d at 802. *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (stating that for contractual relationships, parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities'").

A showing of purposeful direction requires evidence that the defendant's actions

**MEMORANDUM DECISION AND ORDER - 9**

outside the forum were directed at the forum. *Schwarzenegger*, 374 F.3d at 803. The Ninth Circuit evaluates purposeful direction under the Supreme Court's three-part *Calder* test, which "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*. (citing *Dole Food Co. v. Watts*, 303 F.3d 1101, 1111 (9th Cir. 2002)). *See also Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

Kinetic argues that, other than hiring Mr. Wood and considering Idaho his report to work location, it has not committed an intentional act expressly aimed at Idaho or purposefully availed itself of the benefits and protections of Idaho. Kinetic maintains that all of Mr. Wood's work was performed outside of Idaho. Mr. Wood, on the other hand, argues that the first prong of the test is satisfied because Kinetic considered Mr. Wood's report to work location to be his home in Idaho, he regularly performed work duties from his home office, and Kinetic regularly communicated with him by telephone, e-mail, and written correspondence sent to his home.

Recently, this Court found that a long-standing working relationship between two corporations constituted sufficient contact with Idaho such that the purposeful availment prong of the specific jurisdiction test was satisfied. *Albertson's LLC v. Kleen-Sweep Janitorial Co., Inc.*, No. CV 09-263-S-BLW, 2009 WL 3786290 (D. Idaho Nov. 9, 2009). In *Albertson's*, the two companies entered into a contract in 2003 whereby Kleen-Sweep, a Tennessee corporation, would provide janitorial services to Albertson's, an Idaho corporation, at its stores in Florida. The court found the following factors important in

**MEMORANDUM DECISION AND ORDER - 10**

deciding Idaho could assert specific jurisdiction over Kleen-Sweep: the terms of the agreement created a continuing obligation rather than the sale of a single item; Kleen-Sweep sent invoices and all communications to Idaho; and performance reviews occurred each year in Idaho. *Albertson's, LLC*, 2009 WL 3786290 at *4–5. *See also Burger King*, 471 U.S. at 475-76 (explaining that there is a sliding scale, with random and attenuated contacts at one end, versus those actions which deliberately create a substantial connection or continuing obligations in the forum state).

The Court finds that Mr. Wood has met his burden of showing that Kinetic's conduct resulted in purposeful availment. As stated above, any conflicts between the parties' affidavits are resolved in the plaintiff's favor. *See Dole*, 303 F.3d at 1108. The affidavits and allegations in the complaint indicate that Kinetic knew it was hiring an Idaho resident as its employee. Mr. Wood signed the letter agreement outlining the terms of his employment on November 6, 2003, at his home in Idaho. (Wood Aff. Ex. A, Docket No. 8-1.) Even though Mr. Wood traveled extensively, Mr. Wood asserts he used his home office to perform work on behalf of Kinetic. And Mr. Wood's contract expressly acknowledged that his report to work location was Nampa, Idaho. (Wood Aff. Ex. A, Docket No. 8-1.) Mr. Wood and Kinetic enjoyed a six year working relationship while Mr. Wood acted as Kinetic's Regional Labor Manager. During that time, Kinetic paid Mr. Wood's local union dues to the local union in Idaho, paid Mr. Wood wages and remitted taxes to Idaho, advertised its services to Idaho companies, and continued to maintain a registration and certificate of authority such that, if the need arose, it could

**MEMORANDUM DECISION AND ORDER - 11**

perform contracting work in Idaho for Idaho companies.

The parties' contract in this case is analogous to the contract and performance in *Albertson's* which the court found "epitomiz[ed] the type of case involving a continuing business obligation." *Albertson's LLC*, 2009 WL 3786290 at *5. *See also Sheets v. Integrated Information Utility Sys., Inc.*, No. CV 98-1328-KI, 1999 WL 317274 at *1 (D. Ore. June 17, 1999) (finding Oregon had jurisdiction over out-of-state corporation that hired a worker allowed to telecommute from her home in Oregon on the grounds that the employer had created a continuing relationship and obligation with a citizen of another state). Therefore, the Court finds that Kinetic purposefully availed itself of the privilege of conducting activities in Idaho.

### ii. "Arising Out Of" Requirement

To determine whether Mr. Wood's claims against Kinetic arose out of its Idaho related activities, the Ninth Circuit has applied a "but for" test. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131-32 (9th Cir. 2003). "[A] single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Albertson's LLC*, 2009 WL 3786290 at *5 (citing *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007)).

Here, Kinetic purposefully availed itself of the privilege of conducting activities in Idaho by hiring an Idaho employee and maintaining the ability to do business as a contractor in Idaho. Mr. Wood alleges that Kinetic breached its employment agreement with him, an Idaho resident, by failing to pay him for wages owed, and therefore Mr.

**MEMORANDUM DECISION AND ORDER - 12**

Wood's cause of action arises from Kinetic's purposeful contact with the forum. *Albertsons LLC*, 2009 WL 3786290 at *5 (citing, e.g., *Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474, 1480–81 (9th Cir. 1986) (contract constituted defendant's contacts with forum state for purposes of relatedness element of the limited jurisdiction test)). Accordingly, the second prong of the specific jurisdiction test also is satisfied.

### iii. Reasonableness Requirement

Because the Court finds that Mr. Wood has satisfied the first two prongs of the test for specific jurisdiction, Kinetic has the burden of showing that the Court's jurisdiction over it would not be reasonable. *See Schwarzenegger*, 374 F.3d at 802.

In the Ninth Circuit, courts examine seven factors to determine whether the exercise of personal jurisdiction is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Harris Rutsky & Co. Ins. Servs., Inc.*, 328 F.3d at 1132; *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). Because no factor is dispositive by itself, courts must balance all seven factors. *See Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

In this case, Kinetic did not make a real effort to present a compelling case that the

**MEMORANDUM DECISION AND ORDER - 13**

exercise of jurisdiction would not be reasonable, limiting its argument to citing the unreasonableness of haling it into court in Idaho when its witnesses and other evidence is located in California. The Court will, however, briefly address each of the factors mentioned above.

As to the first factor, Kinetic's contacts with the state of Idaho appear limited to the employment agreement with Mr. Wood and Kinetic's contacts with Mr. Wood, an Idaho resident, in order for him to perform under the agreement. Other than the employer-employee relationship, Kinetic has conducted limited business within the state of Idaho and has not done business with any Idaho companies for many years. However, Kinetic has had purposeful, continuous contacts with Mr. Wood, an Idaho resident and Kinetic employee, for over six years. Thus, the first factor weighs in favor of exercising personal jurisdiction over Kinetic.

Regarding the second factor, the Court acknowledges that Kinetic, a corporation headquartered in North Carolina with its principal business office in California, may be burdened by litigating this case in Idaho. However, in this day and age of electronic communication, the fact that some of the documents and evidence exist in California is not weighted as heavily. *Harris Rutsky & Co. Ins. Servs., Inc.*, 328 F.3d at 1133 ("[M]odern advances in communications and transportation have significantly reduced the burden of litigating" in another state when considering the location of witnesses and documentary evidence). Accordingly, although this factor weighs slightly in Kinetic's favor, the Court does not find it very persuasive.

As for the third factor, neither party identified any conflict between the sovereigns—California or Idaho—in this case. Thus, it is weighted equally between the parties.

The fourth factor weighs heavily in favor of exercising personal jurisdiction over Kinetic. Idaho has a strong interest in providing redress for its resident's injury, whether tortious or contractual, occurring in Idaho. *Albertsons LLC*, 2009 WL 3786290 at *7; *Sky Capital Group, LLC v. Rojas*, CV 09-083-S-EJL, 2009 WL 1197956 *6 (D. Idaho April 30, 2009).

Finally, with respect to the fifth and sixth factors, it appears that most of the documents and the witnesses that Mr. Wood would use to prove his case are located in Idaho. Mr. Wood is relying upon the letter agreement outlining the terms of his employment to support his claim that he was a non-exempt employee entitled to overtime pay. Mr. Wood claims he kept records of his overtime hours worked, which records presumably would be located in Idaho. (Compl. ¶ 10, Docket No. 1-3.) Mr. Wood also would have access to Kinetic's communications with him, since those were sent to his home in Idaho either via U.S. Mail, or via e-mail to the computer he maintained at his home in Idaho. Kinetic does not mention and the Court is not aware of the location of Kinetic's evidence and witnesses, although two locations—California and North Carolina—have been mentioned. "[W]hile the defendant's burden in litigating in the forum is considered, it will not be deemed unreasonable unless it constitutes a deprivation of due process." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433

F.3d 1199, 1136 (9th Cir. 2006). Based upon the above, the District of Idaho is advantageous in providing "the most efficient judicial resolution of the controversy" and Mr. Wood's "interest in convenient and effective relief." *Albertson's LLC*, 2009 WL 3786290 at *7 (quoting *Menken*, 503 F.3d at 1060.)

### B. Venue

#### 1. Motion to Dismiss Under Rule 12(b)(3)

Kinetic moves to dismiss Mr. Wood's complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Mr. Wood bears the burden of showing that venue is proper in the District of Idaho. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). There is a strong presumption in favor of the plaintiff's choice of forum. *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000). In the context of a Rule 12(b)(3) motion, the pleadings need not be accepted as true and the court may consider facts outside of the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). The court must accept as true all uncontroverted allegations in the plaintiff's complaint, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009).

Under federal law, a civil action where jurisdiction is not founded solely on diversity of citizenship[4] may be brought only in:

---

[4] Although both parties assert diversity of citizenship as a basis for jurisdiction, Mr. Wood asserts a federal cause of action. Therefore, diversity is not the sole basis for jurisdiction.

**MEMORANDUM DECISION AND ORDER - 16**

>(1) a judicial district where any defendant resides, if all
>defendants reside in the same State,
>(2) a judicial district in which a substantial part of the events
>or omissions giving rise to the claim occurred, or a substantial
>part of property that is the subject of the action is situated, or
>(3) a judicial district in which any defendant may be found, if
>there is no district in which the action may otherwise be
>brought.

28 U.S.C. § 1391(b). For purposes of venue under section 1391, a corporate defendant is deemed to reside in "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). For venue to be proper in the District of Idaho, any one of the three circumstances set forth in section 1391(b) must apply. The Court finds venue is proper in Idaho under section 1391(a)(2) for the reasons discussed below.

For venue to be proper within this District pursuant to section 1391(a)(2), a "substantial part" of the events giving rise to this suit must have occurred in Idaho. Kinetic argues that no substantial event occurred in Idaho because it negotiated and executed the agreement with Mr. Wood in California, Mr. Wood's agreement required substantial work to be performed outside of Idaho, its decisions regarding Mr. Wood's employment and wages occurred in California, and the alleged breach occurred outside of Idaho. Mr. Wood, on the other hand, contends that he worked from his home in Idaho, he executed the agreement in Idaho, and his wages were transmitted to him in Idaho.

The fact that a substantial portion of activities and events occurred in California does not disqualify Idaho as a proper venue as long as substantial activities took place in

Idaho as well. *Masterson v. Swan Range Log Homes, LLC*, No. CV 06-163-S-EJL, 2007 WL 625387 *2 (D. Idaho Feb. 23, 2007). The chosen venue need not be the best venue, but only a qualifying venue. *Masterson*, 2007 WL 625387 at *2 (citing *Merchants Nat'l Bank v. Safrabank*, 776 F.Supp. 538, 541 (D.Kan.1991). It is not necessary for the plaintiff to show that a majority of events giving rise to the action occurred in Idaho, but only that a substantial part of the events took place here. *Masterson*, 2007 WL 625387 at *2 (citing *Pasulka v. Sykes*, 131 F.Supp.2d 988, 994 (N.D.Ill.2001)).

In contract cases, courts look to various factors to inform their decision about whether events are "substantial." These factors include the locations where negotiations and execution of the contract occurred, the place where the contract was intended to be performed, and the place where the alleged breach occurred. *Gulf Ins. Co. v. Glassbrenner*, 417 F.3d 353, 357 (2d Cir.2005); *see also Shropshire v. Fred Rappoport Co.*, 294 F.Supp.2d 1085, 1094 (N.D.Cal. 2003) (finding venue proper where some of the negotiations on the agreement were conducted within the district, the agreement was signed within the district, and a substantial portion of the performance under the Agreement also occurred in the district). Moreover, courts have considered letters, faxes, emails, and telephone calls transmitted from or received in a district during negotiation and execution of a contract to be substantial events for venue purposes. *Kirkpatrick v. Rays Group*, 71 F.Supp.2d 204, 213 (D.C.N.Y.1999).

In this case, the record is scanty concerning the contract negotiations. But the Court is required to draw all reasonable inferences and resolve all factual conflicts in

**MEMORANDUM DECISION AND ORDER - 18**

favor of Mr. Wood.  Mr. Wood executed the employment agreement in Idaho.  Due to his extensive travel, his report to work location was his home in Idaho.  According to Mr. Wood, he used his home office, including his computer and land based telephone line, to perform work for Kinetic.  While Kinetic may have made its decisions concerning whether to pay Mr. Wood overtime at its offices in California, the alleged harm suffered by Mr. Wood—the deduction of wages he claimed for overtime work—occurred in Idaho upon receipt of his paycheck.

Based on the foregoing, the Court agrees with Mr. Wood that a substantial portion of the events or omissions giving rise to his claims occurred in Idaho.

### 2. Motion to Transfer Venue

Finally, Kinetic contends that this matter should be transferred to California pursuant to 28 U.S.C. § 1406(a) and/or 28 U.S.C. § 1631.  28 U.S.C. § 1406(a) permits the court to dismiss an action filed in the wrong district or, in the interest of justice, transfer the action to any district in which it could have been brought.  28 U.S.C. § 1631 provides an additional basis to transfer a case to a court in which the matter could have been brought at the time it was filed if the court finds that it lacks jurisdiction.

28 U.S.C. § 1406(a) permits the court to cure "defects" if the case is filed in the wrong division or district.  Alternatively, if there is no jurisdiction in Idaho, 28 U.S.C. § 1631 permits the court to transfer venue to a district that has jurisdiction.  Because the Court determined that jurisdiction is proper in Idaho and that venue is proper in this

**MEMORANDUM DECISION AND ORDER - 19**

district, the Court declines to transfer venue to the Northern District of California.[5]

**ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED that:**

1) Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or For Improper Venue, or in the Alternative to Transfer Venue (Docket No. 5), is **DENIED**.

2) The Court will conduct a telephonic scheduling conference in this matter on **March 29, 2010 at 11:00 a.m. MDT**. The Plaintiff shall initiate the conference call and when all parties are on the line, connect to the courtroom at **(208) 334-1504.** The Court prefers that a conference call operator be used to place the call. The attached litigation plan shall be due on or before **March 22, 2010.**

DATED: March 9, 2010

Honorable Candy W. Dale
Chief United States Magistrate Judge

---

[5] Kinetic did not move to change venue pursuant to 28 U.S.C. § 1404(a), which is premised upon the convenience of the parties. To the extent that Mr. Wood relied upon section 1404(a) in arguing venue should not be transferred to California, the Court did not consider those arguments.

**MEMORANDUM DECISION AND ORDER - 20**