**Darwin Overson, ISB #5887**
**Eric B. Swartz, ISB #6396**
**JONES & SWARTZ** PLLC
1673 W. Shoreline Drive, Suite 200 [83702]
Post Office Box 7808
Boise, Idaho 83707-708
Telephone:  (208) 489-8989
Facsimile:  (208) 489-8988
E-mail: darwin@jonesandswartzlaw.com
        eric@jonesandswartzlaw.com

**Attorneys for Plaintiff, Ronald Wood**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD WOOD, an individual,<br><br>               Plaintiff,<br><br>vs.<br><br>KINETIC SYSTEMS, INC., a California corporation,<br><br>               Defendant. | Case No. 1:09-cv-00579-CWD<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION (DN 31)** |

Plaintiff respectfully opposes Defendant Kinetic Systems, Inc.'s Motion for Summary Judgment, or, in the Alternative, for Summary Adjudication (DN 31).

### I.  SUMMARY

The undisputed material facts are that the Plaintiff was employed by the Defendant pursuant to a written agreement as a non-exempt hourly employee.  The agreement was fully incorporated pursuant to a merger clause.  The terms of the agreement included express provisions that the Plaintiff would be compensated as a non-exempt hourly employee.  The agreement also expressly provided that the Plaintiff would get four weeks of vacation per year.  The agreement was never

modified or amended by the parties, and the Defendant has not argued that the agreement is ambiguous.

Since the Plaintiff was not employed on a "salary or fee basis," he is "non-exempt" as a matter of law under the FLSA.  The Defendant cannot meet its burden of demonstrating that Plaintiff's employment falls within either the executive exemption or the highly compensated employee exemption.  Both exemptions require compensation to be on a "salary or fee basis."

After Defendant refused to resolve the overtime issue with Plaintiff, Plaintiff brought this lawsuit.  Defendant filed an unsuccessful Rule 12(b) motion without raising the statute of limitations as a defense.  Defendant filed an Answer to the Complaint without raising the statute of limitations as a defense.  Defendant's first attempt to raise the statute of limitations as a defense was in its motion for summary judgment.  Defendant has not sought leave to amend its Answer, nor has Defendant sought to amend the scheduling order.  The deadline for amending the pleadings has long passed.  Defendant has clearly waived the defense.

## II.  STANDARDS

It is not entirely clear what the particular basis is upon which Defendant is seeking an order.  Under Rule 7(b)(1)(B),[1] a motion must state with particularity the basis for the order sought.  Defendant's motion seems to suggest it is being brought pursuant to Rule 12(c) for judgment on the pleadings or alternatively as a Rule 56 motion for summary judgment.  In either case, Defendant's motion does not comply with Rule 7(b)(1)(B).  Plaintiff's position is that the motion should be disregarded by the Court for failure to comply with the Federal Rules of Civil Procedure.  Nevertheless, both standards are set forth herein.

---

[1] All citations to procedural rules are to the Federal Rules of Civil Procedure.

In evaluating a motion for judgment on the pleadings, the Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.*

Summary judgment is only appropriate where the admissible evidence viewed in a light most favorable to the non-moving party demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement Sys.*, 568 F.3d 725, 733 (9th Cir. 2009); *see James River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir. 2000) (initial burden of production can be met by introducing evidence negating an essential element of the opponent's claim or by showing the opponent does not have enough evidence of an essential claim to carry its ultimate burden of persuasion at trial); *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir. 1988) (under Rule 56(e), a trial court can only consider admissible evidence).

The moving party has an initial burden to demonstrate an absence of a material issue of fact and its entitlement to judgment as a matter of law. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007); *Ruffin v. Los Angeles County*, 607 F.2d 1276, 1280 (9th Cir. 1979). Upon meeting that burden, the burden then shifts to the opposing party to demonstrate either the existence of a material issue of fact or that the moving party is not entitled to judgment as a matter of law. *Horphag Research Ltd.*, 475 F.3d at 1035; *Ruffin,* 607 F.2d at 1280.

### III.  ARGUMENT

A.    Defendant's Motion for Summary Adjudication is Untimely

Defendant's Rule 12(c) motion is untimely since it should have been brought shortly after the

pleadings closed.  A motion for judgment on the pleadings must be brought "[a]fter the pleadings are closed—but early enough not to delay trial ... ."  *Id.*  Trial is set for April 4, 2011, and fact discovery is complete on December 1, 2010.  *See* Second Amended Case Management Order (DN 30).  Bringing a motion on the pleadings is not permitted this late in the litigation.  Accordingly, should this Court determine to consider the merits of Defendant's motion for summary judgment, the motion should be considered as one brought under Rule 56.

**B.**  **Defendant is Not Entitled to Judgment as Matter of Law on Plaintiff's State Law Wage Claims, Having Waived the Statute of Limitations Defense by Not Asserting it in Its Answer to the Complaint**

Whether Defendant is moving for judgment on the pleadings or for summary judgment, Defendant has failed to demonstrate that it is entitled to judgment as a matter of law.  A motion on the pleadings under Rule 12(c), and similarly a motion for summary judgment under Rule 56, can only be granted if a party demonstrates they are entitled to judgment as a matter of law.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (Rule 12(c) standard); *San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement Sys.*, 568 F.3d 725, 733 (9th Cir. 2009) (Rule 56 standard).

As a matter of law, Defendant is not entitled to judgment on Plaintiff's state law claims since the defense asserted against those claims has been waived.  The statute of limitations defense Defendant relies on in its attempt to defeat Plaintiff's state law claims was not raised in Defendant's Answer to the Complaint.  (DN 16.)  As such, Defendant is not entitled to judgment as a matter of law having waived any statute of limitations defenses by not asserting them in its Answer to the Complaint.  *See 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 663 fn. 3 (9th Cir. 1999) ("Ciarcia did not plead the affirmative defense of the statute of limitation in his answer.  We recognize that failure to raise the statute of limitation as an affirmative defense constitutes waiver of the defense.").

The applicable rules are quite clear:

> Rule 12(b):  *Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.*
>
> Rule 8(c):  *In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations ... .*

The statute of limitations is a defense that must be affirmatively asserted in either the answer to the complaint or by way of a motion brought under Rule 12(b).  *Grabner v. Willy Motors, Inc.*, 282 F.2d 644, 647 (9th Cir. 1960) (citing *Headrick v. Atchison, T. & S.F. Ry. Co*., 182 F.2d 305 (10th Cir. 1950).  Otherwise it is waived.  *389 Orange Street Partners*, 179 F.3d at 663 fn. 3. Defendant cannot raise the defense at this point in the litigation, having already answered the Complaint.

### 1. Defendant has not been diligent in asserting a statute of limitations defense, which is required to show good cause to amend the scheduling order under Rule 16(b).

Defendant has been dilatory in asserting a statute of limitations defense and therefore cannot satisfy the good cause requirement of Rule 16(b)(4) for amending the scheduling order.  Because the deadline set by the Second Amended Case Management Order has passed, the Defendant's ability to amend its Answer is governed by Rule 16(b), not Rule 15(a).  *Johnson v. Mammoth Recreation, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) (*citing Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D. N.C. 1987) (party seeking to amend pleading after date specified in scheduling order must first show good cause for amendment under Rule 16(b), then, if good cause be shown, the party must then demonstrate that the amendment would be proper under Rule 15(a)).

> "A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under ... Rule 15." *Forstmann*, 114 F.R.D. at 85.  Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose

an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment); *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990); *Amcast Indus. Corp. v. Detrex Corp.*, 132 F.R.D. 213, 217 (N.D.Ind. 1990); *Forstmann*, 114 F.R.D. at 85; 6A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 1522.1 at 231 (2d ed. 1990) ("good cause" means scheduling deadlines cannot be met despite party's diligence). ***Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.*** *Cf. Engleson v. Burlington Northern R.R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992) (carelessness not a ground for relief under Rule 60(b)); *Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir. 1971) (same), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 248 (1972); *Smith v. Stone*, 308 F.2d 15, 18 (9th Cir. 1962) (same). Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *See Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.Me. 1985). If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (emphasis added).

Here, Defendant has not been diligent. This lawsuit was filed on October 8, 2009, in the Fourth Judicial District Court, State of Idaho. (DN 1.) The Complaint, Summons, and Request to Accept Service were faxed to Defendant's counsel on October 20, 2009. (DN 1-1 ¶ 3 Ex. 2.) The Complaint was served on the Defendant on November 3, 2009. (DN 1-1 ¶ 2 Ex. 1.) Defendant filed its Notice of Removal in state court on November 10, 2009. (DN 1-1 ¶ 2 Ex. 1.) On November 10, 2009, Defendant filed its Notice of Removal in this Court. (DN 1.) Defendant then filed a Rule 12(b)(2) and (3) motion on November 23, 2009, challenging this Court's personal jurisdiction and venue.[2] (DN 5.) In that motion, Defendant did not raise the statute of limitations as a defense to

---

[2] Plaintiff reserves the issue of whether the statute of limitations was tolled under Idaho Code § 5-

Plaintiff's state law wage claims.  (DN 5.)  This Court denied Defendant's motion to dismiss. (DN 15.)  On March 17, 2010, Defendant filed an Answer to the Complaint.  (DN 16.)

The parties initially stipulated to a litigation plan that set June 4, 2010, as the deadline for joinder of parties and amendment of pleadings.  (DN 21.)   On September 1, 2010, the parties stipulated to amend the Case Management Order.  (DN 28.)  This Court entered a Second Amended Case Management Order on September 7, 2010 (DN 30).

Of note is that Plaintiff's counsel sought to extend the date for amending the pleadings, and Defendant's attorneys refused.[3]  This is apparent from the language included in the stipulation to amend the case management order:  "Additionally, the parties are not stipulating to resetting the deadline for amending the pleadings and adding parties.  The Plaintiff reserves the right to seek to amend the Case Management Order to change the deadline for amending the pleadings and adding parties by separate motion."  (DN 28.)

The deadline for amending the pleadings has long passed, and the parties have proceeded to invest time and resources in litigating the case all under the presumption that the statute of limitations would not be an issue in the case.  Now, for the first time, Defendant argues the statute of

---

229 for the period of time that Defendant was out of the state of Idaho and not subject to personal jurisdiction or service of process:

> If, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the term herein limited, after his return to the state, and if, after the cause of action accrues, he departs from the state, the time of his absence is not part of the time limited for the commencement of the action.

*Id*.  This Court has correctly found personal jurisdiction over the Defendant.  (DN 15.)  However, should Defendant take the issue up on appeal and prevail, Idaho Code § 5-229 would then be applicable to toll the statute of limitation under Idaho's Wage Claims Act.  Accordingly, Plaintiff reserves the right to raise that issue either on appeal or, in the alternative, on remand.

[3] Affidavit of Counsel in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, or, in the Alternative, for Summary Adjudication ("Aff. of Counsel"), ¶ 2, Ex. A.

limitations in a motion for summary judgment/adjudication.  The time for asserting statute of limitations as an affirmative defense has long passed.  The absence of diligence ends the inquiry.

Defendant has not only been dilatory in raising the statute of limitations defense, but has demonstrated a certain carelessness in the failure to even seek to amend the scheduling order.  Such "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609.  Accordingly, Defendant's motion for summary judgment/adjudication must be denied because it is not entitled to judgment as a matter of law.

## C.      Defendant's Vacation Cap Does Not Apply as a Matter of Law

Defendant's reliance on inadmissible parol evidence in order to incorporate an employee handbook into the written employment contract is impermissible.  Plaintiff's terms of employment with the Defendant were memorialized in a November 2003 written agreement.[4]  The agreement is clear and unambiguous and Defendant has not argued that it is ambiguous.

> The court's objective in constructing a contract is to ascertain and give effect to the intent of the parties.  *George v. University of Idaho*, 121 Idaho 30, 35, 822 P.2d 549, 554 (Ct. App. 1991).  "If the contract is clear and unambiguous, the court gives effect to the language employed according to its ordinary meaning."  *Dille v. Doerr Distributing Co.*, 125 Idaho 123, 125, 867 P.2d 997, 999 (Ct. App. 1993).  In construing unambiguous terms of a contract, the court ascertains the parties' intent from the language contained in the contract.  *George*, 121 Idaho at 35, 822 P.2d at 554.  If the contract is ambiguous, extrinsic evidence may be considered to discern the true intent of the parties.  *Dille*, 125 Idaho at 125, 867 P.2d at 999; *International Eng'g Co. v. Daum Indus., Inc.*, 102 Idaho 363, 365, 630 P.2d 155, 157 (1981).  Therefore, unless the employment agreement is ambiguous, it is improper to consider extrinsic evidence.

*Bilow v. Preco, Inc.*, 132 Idaho 23, 27-8, 966 P.2d 23, 27-8 (1998).

---

[4] Affidavit of Ronald Wood in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, or, in the Alternative, for Summary Adjudication ("Aff. of Ron Wood"), ¶ 2, Ex. A.

**1.   Defendant has not argued that the November 2003 Agreement is ambiguous.**

Defendant has not argued that any of the terms of the November 2003 employment contract are ambiguous.  *See* DN 31-1.  Thus, Defendant's offered parol evidence cannot be considered by this Court in considering Defendant's motion for summary judgment.  *See Bilow*, 132 Idaho at 28 (holding extrinsic evidence contained in two affidavits would not be considered on a motion for summary judgment where the defendant-employer did not argue the employment agreement was ambiguous).  As such, the declarations of Michelle A. Koontz (DN 31-8) and Steve M. Cvitanovic (DN 31-4) are inadmissible parol evidence that this Court cannot consider in ruling on Defendant's motion for summary judgment.  *See Id.; Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir. 1988) (under Rule 56(e), in ruling on a summary judgment motion, a trial court can consider only admissible evidence).

**2.   Defendant is bound by the terms of the November 2003 Agreement.**

Defendant drafted and presented the November 2003 employment agreement to Plaintiff for his acceptance.[5]  Once Plaintiff accepted the terms offered, Defendant must be bound by those terms:

> Courts cannot make for the parties better [or more equitable] agreements than they themselves have been satisfied to make, and by a process of interpretation relieve one of the parties from the terms which he voluntarily consented to; nor can courts interpret an agreement to mean something the contract does not itself contain.

*McCallum v. Campbell-Simpson Motor Co.*, 82 Idaho 160, 166, 349 P.2d 986, 990 (1960).  "In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument."  *Potlatch Educ. Ass'n v. Potlatch School Dist. No. 285*, 148 Idaho 630, 226 P.3d 1277, 1280 (2010) (quoting *C & G, Inc. v.*

---

[5] Aff. of Ron Wood, ¶ 2.

*Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001)).  Here, the November 2003 employment agreement

plainly, clearly and unambiguously states the terms of Plaintiff's employment with the Defendant,

and in no way does the agreement incorporate any cap on vacation.

Under the unambiguous terms of the November 2003 employment agreement, Plaintiff was

not subject to the vacation cap policy allegedly contained in the employee handbook relied on in

Defendant's motion for summary judgment.  The November 2003 agreement clearly provided for

"Four weeks vacation."[6]  A notation to the vacation provision stated that the vacation "cannot be

tracked on pay stub due to Oracle elements.  This will have to be tracked separately."[7]  The express

terms of the contract also provided that Plaintiff would receive "Sick-Time—Eligible to receive sick-

time compensation in accordance with Company policy."  *Id*.  As with the provision governing

vacation pay, the provision governing sick-time referenced the same notation indicating that it would

have to be tracked separately "due to Oracle elements."  *Id*.  The only reference to Company policy,

however, is in relation to sick-time.  *Id*.  The provision setting out the terms of vacation pay makes

no mention of Company policy.  *Id*.  Plaintiff's employment contract with Defendant, therefore, does

not incorporate any "Company policy" that would put a cap on vacation.

Additionally, Defendant did not incorporate its Company policy governing vacation accrual

into its employment agreement with Plaintiff by way of separate agreement.[8]  Defendant has

produced no signed writing modifying the express terms of the November 2003 agreement.[9]  Though

Defendant submits to this Court copies of excerpts of the "Company policy," the document from

---

[6] Aff. of Ron Wood, ¶¶ 2, 5, and Ex. A.
[7] Aff. of Ron Wood, ¶ 2, and Ex. A.
[8] Aff. of Ron Wood, ¶¶ 2-5, and Ex. A.
[9] Aff. of Counsel, ¶¶ 3-6.

which those excerpts were taken was never agreed to or acknowledged by the Plaintiff.[10]

### 3.  The November 2003 Employment Contract is Fully Integrated by a Merger Clause.

Plaintiff's November 2003 employment agreement is complete on its face and fully integrated due to the inclusion of a thorough merger clause, and as such the plain language of the contract controls.  A merger clause **conclusively** establishes that the contract is complete and that it cannot be altered by alleged extrinsic evidence.  *Howard v. Perry*, 141 Idaho 139, 141-42, 106 P.3d 465, 467-68 (2005).  "The merger clause is not merely a factor to consider in deciding whether the agreement is integrated; it proves the agreement is integrated."  *Howard*, 141 Idaho at 142, 106 P.3d at 468.

The employment contract included the following language:

> The term of your employment with Kinetics is at will.  This means that either you or Kinetics may terminate the employment relationship at any time, with or without cause, with or without notice.  With respect to the nature of your employment relationship with Kinetics, this constitutes the full, complete, and final agreement between you and Kinetics.  This agreement cannot be modified or amended unless done so in writing and signed by both you and the President or Vice President of Human Resources and Labor Relations.

> In acknowledgement that this letter is consistent with your understanding and that you agree to the provisions set forth in this letter, please sign, date, and return the enclosed copy of this letter.

> . . . .

> ### ACKNOWLEDGEMENT

> I, the undersigned, understand and agree to the terms and conditions of employment set forth in this letter.  I further understand and agree that the terms of this letter supersede any and all prior or contemporaneous agreements and/or promises concerning the terms of my employment and that there are no other promises, expressed or implied, concerning the terms of my employment with Kinetics, other than those expressly set forth or referenced herein.[11]

---

[10] Aff. of Counsel, ¶¶ 3-7 and Ex. B (Acknowledgement page, Bates Nos. KSI 1-3, 6-7 and 77).
[11] Aff. of Ron Wood, ¶ 2, Ex. A.

No signed written modifications or amendments were ever entered into between the parties.[12]

From November 2003, when Plaintiff signed the employment agreement, to the date of his termination, Plaintiff was never informed or otherwise instructed that any policy setting a cap on vacation accrual applied to his employment agreement with the Defendant.[13]  While the written agreement expressly incorporated those portions of the Company policy governing sick-time, no similar restriction was placed on vacation.[14]  Where it was expressed by the contract that sick-time would be governed by Company policy and no similar expression was included relating to vacation, the agreement must be interpreted as the parties intending that the Company policy would apply to sick-time and not to vacation.

For the above-stated reasons, Defendant's Company policy capping vacation accrual did not apply to the Plaintiff.  Vacation wages may not be an entitlement but, in this case, they are a benefit of employment for which Plaintiff bargained and Defendant agreed to extend to Plaintiff expressly in his agreement, without limitation on accrual or by way of reference to Defendant's employee handbook.

**D.    Plaintiff's Employment with Defendant Was as a Non-Exempt, Hourly Employee and Therefore the FLSA's Overtime Provisions Apply**

For an employer to establish that its worker is exempt from FLSA overtime pay requirements, it bears the heavy burden of proving that the worker falls "plainly and unmistakably" within the terms of the exemption.  *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (cautioning against extending exemptions "to other than those plainly and unmistakably within its terms"); *Bothell v. Phase Metrics*, 299 F.3d 1120, 1125 (9th Cir. 2002).  Coverage under the FLSA should be broadly

---

[12] Aff. of Ron Wood, ¶¶ 3-4; Aff. of Counsel, ¶¶ 3-7 and Ex. B.
[13] Aff. of Ron Wood, ¶¶ 3-5.
[14] Aff. of Ron Wood, ¶ 2 and Ex. A.

construed and exemptions narrowly construed. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Powell v. United States Cartridge Co.*, 339 U.S. 497, 516 (1950); *A.H. Philips, Inc.*, 324 U.S. at 493; *Clark v. United Emergency Animal Clinic, Inc.,* 390 F.3d 1124, 1127 (9th Cir. 2004); *Worthington v. Icicle Seafoods, Inc.*, 774 F.2d 349, 352 (9th Cir. 1984), *reversed on other grounds*, 475 U.S. 709 (1986). The twin purposes of the overtime requirements of the FLSA are to: (i) compensate workers at higher rates if they are indeed required to work over 40 hours in a week; and (ii) spread employment around by discouraging employers from making their workers put in long hours in excess of 40 hours per week. *See Overnight Motor Transport v. Missel*, 316 U.S. 572, 577-78 (1942).

Defendant argues that Plaintiff was "employed in a bona fide executive capacity."[15] Additionally, Defendant argues that Plaintiff was a highly compensated employee under 29 C.F.R. § 541.601.[16] It is uncontested that Plaintiff earned more than $100,000 during each of the relevant years of employment with Defendant. As such, the relevant analysis is whether Plaintiff was a "highly compensated employee" as that exemption is defined by 29 C.F.R. § 154.601.

Under the highly compensated employee analysis, Defendant must prove three factual elements: First, that Plaintiff was paid "at least $100,000." 29 C.F.R. § 541.601(a). Second, that Plaintiff was paid on "a salary or fee basis." 29 C.F.R. § 541.601(b)(1). And finally, that Plaintiff "customarily and regularly perform[ed] any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee identified in subparts B, C or D of this Part." 29 C.F.R. § 541.601(a); *see* 29 C.F.R. §§ 541.100 (executive employee exemption), 541.200

---

[15] Defendant's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, or, in the Alternative, Summary Adjudication (DN 31-1) ("Def's Mem. Supp. of MSJ"), § III.C, p. 12.

[16] Def's Mem. Supp. of MSJ, § III.C, p. 13.

(administrative employee exemption), and 541.301(professional employee exemption).

Since the express terms of the November 2003 employment agreement clearly state that the Plaintiff was hourly and non-exempt, Defendant cannot satisfy the second factual element for demonstrating that Plaintiff was exempt under the highly compensated employee exemption.[17] Similarly, Defendant cannot show that Plaintiff falls within the executive employee exemption since that exemption also is limited to employees compensated on a salary or fee basis. *See* 29 C.F.R. § 541.100. As such, Defendant has failed to carry its heavy burden of demonstrating that Plaintiff's employment fell within one of the several exemptions set out in the FLSA. Defendant's motion must therefore be denied.

     **1. Defendant expressly contracted to employ Plaintiff as an hourly "Non-Exempt" employee.**

The plain language of the November 2003 agreement states the "***Base Wage***" as "***$62.50/hour. Employment classification is non-exempt***."[18] Plaintiff's November 2003 employment agreement must be "construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *Potlatch Educ. Ass'n v. Potlatch School Dist. No. 285*, 148 Idaho 630, 226 P.3d 1277, 1280 (2010) (*quoting C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001)). As a matter of law, the November 2003 employment agreement was fully integrated by the inclusion of a merger clause. *Howard v. Perry*, 141 Idaho 139, 141-42, 106 P.3d 465, 467-68 (2005). "The merger clause is not merely a factor to consider in deciding whether the agreement is integrated; it proves the agreement is integrated." *Howard*, 141 Idaho at 142, 106 P.3d at 468.

---

[17] Aff. of Ron Wood, ¶ 2 and Ex. A.
[18] Aff. of Ron Wood, ¶ 2, Ex. A (emphasis added).

The parol evidence presented by Defendant in support of its contention that Plaintiff was a salaried employee is inadmissible. The November 2003 "agreement cannot be modified or amended unless done so in writing and signed by both you [the Plaintiff] and the President or Vice-President of Human Resources and Labor Relations."[19] No signed written modification or amendment was ever entered into by the parties.[20]

Plaintiff was paid for at least 40 hours of work per week from November 2003 through the date of his termination.[21] However, during that period, the only weeks in which Plaintiff did not actually work 40 hours were those in which there were days for which he was paid for Holiday Time, Vacation Time or Sick Leave.[22] Otherwise, Plaintiff actually worked at least a full 40 hours every week, and for extended periods of time would actually work in excess of 40 hours per week.[23] Under these circumstances, it cannot reasonably be inferred that Plaintiff was a salaried employee merely because he was paid for at least 40 hours for every work week during the relevant period.

Despite working more than 40 hours per week in at least 138 weeks since January 2003, Defendant only paid Plaintiff for overtime on three occasions: July 27, 2008 (10 hours), November 16, 2008 (8 hours), and January 1, 2009 (12 hours).[24] Each of those three occasions were after Defendant transferred Plaintiff from the Southeast/East Region, where it was frequently necessary for Plaintiff to work overtime, to the Southwest Region, where it was rarely necessary for Plaintiff to work overtime.[25] Despite Defendant's arguments to the contrary, Defendant knew the

---

[19] Aff. of Ron Wood, ¶ 2, Ex. A.
[20] Aff. of Ron Wood, ¶¶ 2-3 and Ex. A.
[21] Aff. of Ron Wood, ¶ 6.
[22] *Id.*
[23] *Id.*
[24] Aff. of Ron Wood, ¶ 7 and Ex. B; Aff. of Counsel, ¶ 8 and Ex. C.
[25] Aff. of Ron Wood, ¶ 8.

Plaintiff was non-exempt and that it was required to pay him overtime.  Otherwise, there would be

no reason that Defendant would pay Plaintiff overtime on those three occasions after his transfer.

According to the Affidavit of Michelle A. Koontz, submitted by the Defendant, Plaintiff's transfer

was purely a lateral move:  "In July 2008, Plaintiff was transferred to the Southwest Region as Labor

Manager.  This transfer was a lateral move from one Region to another.  It did not involve any

change in pay or position."[26]

> **2. Plaintiff is not claiming he worked overtime hours as the Regional Labor Manager for the Southeast/East Region of Kinetics.**

Defendant focuses exclusively on the periods of time when Plaintiff was working as the

Regional Labor Manager.  However, documents produced by Defendant in discovery indicate that

Plaintiff was reassigned several times to other positions.[27]

Prior to the November 2003 agreement, Plaintiff was assigned a job title and working title of

Superintendent.[28]  In that capacity, he worked from late January 2003 through September 2003 on a

project in Austin, Texas known as the Sandhill Power Plant Project.[29]  Working in that capacity for

that period of time, Plaintiff accrued approximately 724 hours of overtime, for which he has not been

compensated.[30]  During that period, he worked an average of 60.68 hours per week.[31]

In November 2003, Plaintiff was reassigned to the Southeast Region, with the assigned job

title of General Foreman and the working title of Labor Manager.[32]  He worked in that capacity until

---

[26] Declaration of Michelle A. Koontz, ¶ 12 (DN 31-8).
[27] Aff. of Counsel, ¶ 9 and Ex. D.
[28] Aff. of Ron Wood, ¶ 9; Aff. of Counsel, ¶¶ 9, 10 and Ex. D.
[29] *Id.*
[30] Aff. of Ron Wood, ¶ 9 and Ex. C.
[31] *Id*.
[32] *See* Aff. of Ron Wood, ¶ 10; Aff. of Counsel, ¶ 9 and Ex. D (Bates No. KSI 152).

October 2005, when he was again reassigned.[33]   His new job title and working title was that of Site

Labor Manager & General Superintendent.[34]   Part of the reassignment was a change in job site from

Defendant's Durham, North Carolina, office to a job site in Elkton, Virginia.[35]   In that capacity,

Plaintiff worked from October 2005 through November 2006 in Elkton on a project that Defendant

had contracted with Coors Brewing to perform.[36]   During that period, Plaintiff accrued 1,564 hours

of overtime/double time, for which he has not been compensated.[37]   During that period, he worked

an average of 67.92 hours per week.[38]

There is no documentation of a reassignment of Plaintiff back to Labor Manager.[39]   However,

Defendant has produced a personnel change notice sheet that indicates that on November 20, 2006,

Plaintiff was reassigned from "Labor Manager" to "Labor Manager" with the only change being the

job site relocation from Elkton to Nampa, Idaho.[40]

In February 2007, Plaintiff was again reassigned to another job site in the capacity of a

Superintendent.[41]   From February 2007 until June 2007, Plaintiff was the Superintendent on a project

that Defendant had contracted with Eli Lilly to perform in Puerto Rico.[42]   During that period,

Plaintiff accrued 576.5 hours of double time, for which he has not been compensated.[43]   During that

period, he worked an average of 76 hours per week.[44]

---

[33] *See* Aff. of Counsel, ¶¶ 9, 10 and Ex. D (Bates No. KSI 135); Aff. of Ron Wood, ¶ 10.
[34] *Id.*
[35] *Id.*
[36] Aff. of Ron Wood, ¶ 10.
[37] Aff. of Ron Wood, ¶¶ 9-10 and Ex. C.
[38] Aff. of Ron Wood, ¶ 9 and Ex. C.
[39] Aff. of Counsel, ¶ 10 and Ex. D.
[40] Aff. of Counsel, ¶ 10 and Ex. D (Bates No. KSI 130).
[41] Aff. of Ron Wood, ¶ 11.
[42] *Id.*
[43] Aff. of Ron Wood, ¶¶ 9, 11, and Ex. C.
[44] Aff. of Ron Wood, ¶ 9 and Ex. C.

In July 2007, Plaintiff was reassigned as Superintendent to a project that Defendant had contracted with GlaxoSmithKline in Marietta, Pennsylvania. to perform.[45]  Plaintiff worked on that project until November 2007, accruing 527 overtime/double time hours.[46]  During that period, he worked an average of 66.30 hours per week.[47]

In January 2008, Plaintiff was again reassigned but continued to work in the capacity of a Superintendent.[48]  From January 2008 through March 2008, Plaintiff was a Superintendent on a job that Defendant had contracted to perform for the Biogen Company.[49]  During that period, Plaintiff accrued 357 hours of overtime/double time.[50]  During that period, he worked an average of 65.54 hours per week.[51]

Throughout the periods when he was working at specific project sites and accruing overtime and/or double time hours, Plaintiff repeatedly brought up the fact that, under his agreement with Defendant, he was entitled to overtime pay.[52]  He was repeatedly told that the issue was being worked on.[53]  Throughout the time he had been accruing overtime hours, Plaintiff had been told that he could not submit time cards with more than 40 hours recorded on them.[54]

By March 2008, Plaintiff was quite frustrated with Defendant's refusal to address the issue.[55] Plaintiff again approached Robert Portman, his immediate supervisor at the time, about the overtime

---

[45] Aff. of Ron Wood, ¶ 12.
[46] Aff. of Ron Wood, ¶¶ 9, 12, and Ex. C.
[47] Aff. of Ron Wood, ¶ 9, Ex. C.
[48] Aff. of Ron Wood, ¶ 13.
[49] *Id.*
[50] Aff. of Ron Wood, ¶¶ 9, 13, and Ex. C.
[51] Aff. of Ron Wood, ¶ 9, Ex. C.
[52] Aff. of Ron Wood, ¶ 14.
[53] *Id.*
[54] *Id.*
[55] Aff. of Ron Wood, ¶ 15.

pay he was due.[56]  Mr. Portman said he was working on it.[57]  In March 2008, Plaintiff submitted a time card with overtime recorded on it, but that was rejected by the Defendant.[58]  Defendant refused the time card on the basis that Plaintiff was allegedly exempt.[59]

In July 2008, shortly after the overtime issue had come to a head with the management personnel of Defendant, Plaintiff was transferred to the Southwest Region.[60]  Plaintiff remained in that assignment until he was terminated in January 2009.[61]  In that assignment there was very little overtime required.[62]  During the entire period, Plaintiff worked overtime during three separate pay weeks:  July 27, 2008 (10 hours), November 16, 2008 (8 hours), and January 1, 2009 (12 hours).  On each occasion after his transfer to the Southwest Region, Defendant paid the Plaintiff his overtime earned.

While Defendant places much emphasis on Plaintiff's assignment/job title as Regional Labor Manager, Plaintiff is simply not claiming any overtime/double time pay for periods of time when he was working as a Regional Labor Manager.[63]  The reason he is making no such claim is that the Labor Manager position did not require any significant amount of overtime and Plaintiff did not accrue any significant overtime while working in that capacity.[64]  Thus, whether the Labor Manager position meets the requirements for the executive exemption is irrelevant to this litigation.  What is relevant is the fact that Defendant contracted with Plaintiff to pay him an hourly wage, and thus

---

[56] Aff. of Ron Wood, ¶ 15 and Exs. D-F.
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] Aff. of Ron Wood, ¶ 16; Aff of Counsel, ¶¶ 9-10, Ex. D (KSI 118).
[61] *Id.*
[62] Aff. of Ron Wood, ¶ 16.
[63] *See* Aff. of Ron Wood, ¶ 17.
[64] *Id.*

cannot meet its burden of demonstrating that Plaintiff was an exempt employee.  As such, Defendant's motion must be denied.

E.      Plaintiff Stipulates **to t**he Dismissal **o**f His Defamation Claim

Plaintiff stipulates to the dismissal of his claim of defamation.

## IV.  CONCLUSION

Defendant is not entitled to judgment as a matter of law since Plaintiff's fully integrated employment agreement provides that Plaintiff was employed as a non-exempt hourly employee.  No exemptions exist for hourly employees.

Defendant's belated effort to have the case dismissed on statute of limitations grounds is unavailing since the defense was not raised in the Answer, Defendant has not sought leave to amend the Answer, and has not sought to amend the scheduling order.

According, Defendant's motion for summary judgment must be denied.

DATED this 9th day of November, 2010.

JONES & SWARTZ PLLC


By ____/s/ Darwin L. Overson_____
DARWIN L. OVERSON
ERIC B. SWARTZ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of November, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Fredric V. Shoemaker
Thomas J. Lloyd
GREENER BURKE SHOEMAKER, P.A.
950 W. Bannock Street, Suite 900
Boise, ID 83702

H. Ann Liroff
Steven M. Cvitanovic
HAIGHT BROWN & BONESTEEL, LLP
71 Stevenson Street, 20th Floor
San Francisco, CA 94105


<u>        /s/ Darwin L. Overson        </u>
DARWIN L. OVERSON
ERIC B. SWARTZ