**Darwin Overson, ISB #5887**
**Eric B. Swartz, ISB #6396**
**JONES & SWARTZ** PLLC
1673 W. Shoreline Drive, Suite 200 [83702]
Post Office Box 7808
Boise, Idaho 83707-708
Telephone:  (208) 489-8989
Facsimile:  (208) 489-8988
E-mail: darwin@jonesandswartzlaw.com
        eric@jonesandswartzlaw.com

**Attorneys for Plaintiff, Ronald Wood**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD WOOD, an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>KINETIC SYSTEMS, INC., a California corporation,<br><br>                    Defendant. | Case No. 1:09-cv-00579-CWD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT IN OPPOSITION TO SUMMARY JUDGMENT [Dkt. 40-1]** |

Plaintiff respectfully submits the following memorandum in opposition to Defendant's Motion to Strike Plaintiff's Affidavit in Opposition to Summary Judgment [Dkt. 40-1].

## I. SUMMARY

Defendant's position is that the Plaintiff's affidavit is a sham.  However, as will be set forth herein, Defendant is reading Plaintiff's deposition testimony out of context and drawing impermissible inferences from the testimony that are not in keeping with the standards for summary judgment.  When determining whether summary judgment is appropriate, all evidence must be construed in a light most

favorable to the non-moving party.  F.R.C.P. 56.

Furthermore, before this Court can strike the Plaintiff's affidavit, there must be a factual finding that the affidavit "flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment. . . .  [T]he district court must make a factual determination that the contradiction was actually a 'sham.'"  *Kennedy v. Allied Mutual Insurance Co.,* 952 F.2d 262, 266-67 (9th Cir. 1991). Here, Defendant has not made such a showing and therefore the motion to strike should be denied.

As support for it motion, Defendant claims the Plaintiff testified to the following:

> 1) That from November 4, 2003 to July, 2008, he was a Regional Labor Manager;
>
> 2) That he was paid an annual salary of $130,000; and
>
> 3) That he was not eligible for overtime compensation as a Regional Labor Manager.

Defendant's Memo., p. 2 [Dkt. 40-1].  Defendant further claims that "Plaintiff acknowledged that he was a Regional Labor Manager and not eligible for overtime compensation during the entire time relevant to his claims for additional wages . . . ."  *Id.*  However, Defendant has seriously misconstrued the Plaintiff's testimony.

One of the most glaring examples of Defendant misconstruing the Plaintiff's testimony is found where Defendant asks questions of the Plaintiff as to what his understanding was in terms of whether he was exempt.  Wood Depo., pp. 67:1-5; 125:20 – 126:10.*  Here, the deposition testimony is not contradictory to Plaintiff's affidavit.  The Defendant would have this Court adopt portions of Plaintiff's deposition testimony regarding his understanding of whether he was "exempt" as a legal admission,

---

* *See* Declaration of Counsel in Support of Plaintiff's Opposition to Defendant's Motion to Strike, filed contemporaneously herewith.

when Defense counsel at the outset of the deposition made it clear that he was not asking the Plaintiff

for a legal conclusion when he was asking questions that included the term "exempt." Defense counsel

made it clear up front that he was using the term only in the sense of obtaining the Plaintiff's

understanding as to whether he would be entitled to overtime pay for certain work.

> Q. Keep the document. I'm going to ask you some questions about it.
>    You've heard of the term "exempt employee"; correct?
> A. Yes.
> Q. You've used that term yourself?
> A. Yes.
> Q. And I'm not looking for legal definitions of what an exempt
>    employee is. I just want to focus on conversations where that term
>    was used, all right. So I'm not asking for anybody to go to
>    hornbook or a statute or the Fair Labor Standards Act to define
>    what an exempt employee is. I just want to know what people said,
>    what they heard, and what they wrote. Okay?
> A. Yes.
> Q. So that is what I mean. I say that partly for your counsel as well.

Wood Depo., p. 23:1-19. With that proviso, the questions were not calling for legal conclusions, and

yet, in the pending motion, Defendant now asks this Court to take that step to conclude that Plaintiff

understood the intricacies of FLSA law and the complexities surrounding its exceptions to overtime pay

requirements.

Defendant also quotes Plaintiff's testimony relating to time periods completely unrelated to the

time period when the Plaintiff was working under his November 4, 2003 contract that expressly stated

he would be paid an hourly wage as a non-exempt employee of the company.

Defendant also makes much of the testimony surrounding periods when the Plaintiff was

working as a Regional Labor Manager. However, Plaintiff's affidavit clarified his deposition testimony

by explaining that he did not expect to be paid overtime when working in the capacity of a Regional

Labor Manager because he did not work overtime hours in that capacity and the job did not require

overtime hours.  In that capacity, he consistently worked a full 40-hour work week, and thus makes no claim for overtime worked in that capacity.  There was some testimony that Plaintiff answered a few questions for the employees who replaced him as Regional Labor Manager while he was working as a Project Superintendent, but there is no evidence that Plaintiff spent any significant time with those communications.  Even if the Plaintiff had worked a few hours overtime performing the function of a Regional Labor Manager, his contract does not make a distinction between his work as Regional Labor Manager and his work as Project Superintendent.

What is consistent between the deposition and the affidavit is that the Plaintiff was paid hourly and when working as a Project Superintendent he worked significant overtime and expected to be compensated for it, but his employer refused to comply with the express terms of his employment contract and refused to comply with the law as set forth under the FLSA.

## II. ARGUMENT

Defendant's focus is primarily on three issues:  First, Defendant claims that the Plaintiff testified that from November 4, 2003 until July 2008, he was a Regional Labor Manager.  Second, Defendant claims that the Plaintiff testified that he was paid an annual salary of $130,000.  Finally, Defendant claims that the Plaintiff testified that he was not eligible for overtime compensation as a Regional Labor Manager.  Each of these alleged inconsistencies will be addressed herein in the order in which they appear in the deposition rather than as the Defendant has presented them.

---

**Deposition Testimony: (p. 13:6-8)**
Q.  When did you begin working with Kinetic Systems?
A.  1988.

**Affidavit of Ron Wood: (¶ 2)**
From November 2003 until January 2009, I was employed by Kinetic Systems, Inc. ("Kinetic") pursuant to a written employment

agreement. My employer drafted the written agreement, presented it to me, I signed it, and returned it. Kinetic mailed to my home in Idaho the November 2003 employment agreement that is the subject of this lawsuit. I have attached a true and correct copy of the November 2003 employment agreement as Exhibit A hereto.

*Response:* **The Plaintiff's affidavit is not inconsistent with his deposition testimony. The two statements deal with two separate periods of time. This is demonstrated by the deposition testimony cited by Defendant in the Declaration of Christina Marrow [Dkt. 40-3] Ex. A, p. 2:**

**Deposition Testimony: (pp. 15:24 – 16:9)**
Q. Quick question: Between 1988 and your termination from Kinetic Systems in 2009, did you work continuously for Kinetic Systems?
A. I was laid off from, I believe it was June of '89 until January of 1990.
Q. So other than that brief layoff period there was continuous employment between 1988 to 2009?
A. Between 1990 -- I was laid off between 1988 and 1990. It was continuous employment from 1990 to 2009.

---

**Deposition Testimony: (pp. 25:12 – 26:4)**
Q. You told me that you were entitled to overtime. Did you ever say to Tom Land either in a reply e-mail or in a letter or any other way in writing or verbally that you were entitled to overtime?
MR. OVERSON:   Objection; assumes facts not in evidence, form of the question. Go ahead and answer the question.
THE WITNESS:   I don't believe I ever did respond to Tom my misunderstanding. I don't believe I ever did respond to Tom Land stating that I would be eligible, that I should be nonexempt.
Q. (BY MR. CVITANOVIC) So I understand what you are saying, you don't ever recall responding to Tom Land that you believe you were nonexempt.
A. Correct.

**Affidavit of Ron Wood: (¶ 14)**
Throughout the periods when I was working at specific project sites and working overtime and/or double time hours (depending on the state law of the location), I repeatedly brought up the fact that, under my agreement with Kinetic, I was entitled to overtime pay.

Repeatedly I was told that the issue was being worked on. Throughout the time I had been working overtime hours, I was told that I could not submit time cards with more than 40 hours recorded on them.

**_Response_: First, the foundation for the email was not properly laid. Defense counsel represented the exhibit referred to just prior to the excerpted testimony as being an email from Tom Land to Ron Wood. Mr. Wood testified that he did not remember the email. Wood Depo., pp. 22:11 – 26:8. Second, the email referenced and marked by Defense counsel as Exhibit 1 predated Plaintiff's November 4, 2003 employment contract. Wood Depo., p. 22:11-16. The email is dated at the bottom of the page as January 19, 1998—which is odd in itself since normally one would expect the date and time stamp of an email to appear near the subject line. Third, the email has no relevance to the claims since it relates to a job transfer unrelated to either the Regional Labor Manager or the Project Superintendent, as is clear from the subject line of the email. Finally, the testimony only addresses whether Plaintiff responded to Tom Land. Plaintiff testified that he raised the issue of overtime owed to him with Bob Portman, Dan Schall and Alexa Koontz. Wood Depo., pp. 75:7 – 76:12.**

---

**Deposition Testimony: (p. 34:11-18)**
Q. Are you claiming that you were entitled to overtime during that period between 2000 and the offer letter of November 4, 2003?
A. Yes.
Q. Did you bill overtime?
A. Yes.
Q. Did you get paid overtime?
A. Yes.

**Affidavit of Ron Wood: (¶ 7)**
Despite working more than 40 hours per week in at least 138 weeks since January 2003, for a total of approximately 3,024.5 hours of overtime, Kinetic only paid me for overtime on three occasions. On

July 27, 2008, I was paid for 10 hours of overtime. On November 16, 2008, I was paid for 8 hours of overtime. And on January 1, 2009, I was paid for 12 hours of overtime. I have attached hereto as Exhibit B true and correct copies of my three pay stubs that indicate I was paid overtime in July and November 2008 and in January 2009.

*Response:* **There is no inconsistency since two excerpts cover two separate but overlapping time periods.**

---

**Deposition Testimony: (p. 40:17-21)**
Q. (BY MR. CVITANOVIC) You believe my statement is correct, that as a labor manager you were not entitled to overtime; that is your understanding?
A. Yes.

*Response:* **The Plaintiff's affidavit explains this testimony in paragraph 31:**

It has been represented in Kinetic Systems, Inc.'s Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, or, in the Alternative, Summary Adjudication, that I acknowledged in my deposition that as a Labor Manager, I was an "exempt executive." That is not true. My deposition testimony was that I understood as a "labor manager" I was "not entitled to overtime" but it was not because of my status as either exempt or non-exempt. It was because I did not work any overtime in that capacity and no overtime was required of me when I was working in that capacity.

---

**Deposition Testimony: (p. 42:11-25)**
Q. Exhibit 3 appears to be two e-mails . The first e-mail from yourself, October 5th, 2003. Did you send this e-mail?
A. Yes.
Q. You drafted the original message of this e-mail; correct?
A. Yes.
Q. And you wrote: Hourly/salary 62.50 an hour, "$130,000 annual (no overtime)"; you wrote that?
A. That is what it states, yes.
Q. And that is what you understood the deal was with Kinetic Systems for your new position as the labor manager?
A. As a labor manager, yes.

**_Response_:**  The above testimony relates to the email of October 2003, which included terms that were not incorporated into the final agreement of November 4, 2003.  As such, it is inadmissible parol evidence and should be disregarded by this Court; particularly in light of the integration clause included in the written contract.  Furthermore, Defendant alleges the testimony is inconsistent with paragraph 14 of Plaintiff's affidavit, but it is not clear in the least where such a conflict exists since the testimony discusses an email predating the period of time discussed in paragraph 14 of the affidavit.

---

**Deposition Testimony (p. 45:2-11)**
Q. We'll get into that then.  I want to be clear on one thing with respect to the salary component where you say $130,000 annual.  I want to make sure we have an understanding of how that was paid.  That was an annual salary that you were paid regardless of vacation, sick days, travel time; you got paid that amount whether you billed 7.5 hours a day or 9.5 hours a day as labor manager?
A. Yes.

**_Response_:**  The above testimony relates to the email marked as Exhibit 3 to Plaintiff's deposition, which predated the final November 4, 2003 employment agreement at the center of this lawsuit.  Reading the testimony in context, this is clear:

Q. I think we'll get into that.
   So this Exhibit 3, your e-mail, is only for time that you spent as a labor manager and not for time as a project superintendent?
A. Yes.  Working in the capacity of a labor manager, yes.
Q. Would it make a difference if you were actually on-site as a project superintendent as opposed to being in Durham, North Carolina solving issues for a project, in the Coors project, as an example?
A. Could you rephrase that question?
Q. Okay.  So your office was in Durham, North Carolina; right?
A. As a labor manager.
Q. As a labor manager.
A. Yes.

Q. From that office you did your labor management functions.
A. And traveled to various projects, yes.
Q. And from that office you could also do functions that would fall under the project superintendent for a particular project; isn't that right?
A. No, sir.
Q. Was it two separate things?
A. Yes, sir.
Q. We'll get into that then. I want to be clear on one thing with respect to the salary component where you say $130,000 annual. I want to make sure we have an understanding of how that was paid. That was an annual salary that you were paid regardless of vacation, sick days, travel time; you got paid that amount whether you billed 7.5 hours a day or 9.5 hours a day as labor manager?
A. Yes.

**Wood Depo., pp. 43:25 – 45:11. Exhibit 3, as already discussed, is inadmissible parol evidence.**

**Deposition Testimony: (pp. 48:20 – 49:5)**
Q. So the period of time between November 2003 and July of 2008 when you were then transferred to the southwest region, you were a labor manager during that entire period; correct?
A. Yes. While I was working as a labor manager capacity, yes.
Q. Actually, could you -- would it be more accurate to say you were working as a labor manager that occasionally did project superintendent work?
A. Yes.

_Response:_  **The above statement is not inconsistent with Plaintiff's affidavit. It is quite consistent. It is undisputed that between November 2003 and July 2009, Plaintiff was employed as Regional Labor Manager other than during periods when he was employed as a Project Superintendent. Affidavit of Ron Wood, ¶¶ 17, 30-31. It is further undisputed that Plaintiff is not claiming any overtime hours for periods other than when he was working as a Project Superintendent. _Id._; Wood Depo., pp. 31:25 – 40:25. He is not claiming any overtime hours for work done while he was labor manager since he did not work any overtime during those times. _Id._**

There is nothing inconsistent between the Plaintiff's deposition testimony and his affidavit. The testimony is quite limited in the sense that it described one aspect of the Plaintiff's work as a Labor Manager. It touches on no aspect of his work as a Project Superintendent, which is the work he was performing during the periods at issue in this case.

---

**Deposition Testimony: (p. 55:5-22)**

Q. As labor manager, I want to just kind of go over a few things, in your role as labor manager from 2003 all the way to and including the transfer to the southwest in July of 2008 -- did I get the dates right?

A. Yes.

Q. So when I say your role as labor manager, I'm talking that entire period of time, so I don't have to keep saying the dates. I will if you want me to. So between the period of time, again just for clarity here, November 4, 2003 and the time you were transferred to the southwest region in July of 2008 as labor manager, I want to go over some of the things you did. We already talked about as the labor manager you were being the liaison with the local union; right?

A. Yes.

Again, this is testimony consistent with Plaintiff's affidavit and internally consistent with what was testified to by the Plaintiff in his deposition. As a Labor Manager, he understood that he was not working overtime hours and would therefore not be eligible. Furthermore, earlier in the deposition, Defense counsel clarified that questions as to Plaintiff's understanding of what "exempt" meant by Defense counsel to be limited to just that, the Plaintiff's understanding and not a legal understanding. Wood Depo., p. 23:1-17. With that understanding throughout the deposition, no objections were interjected on a basis that they called for a legal conclusion. Now, however, Defendant seeks to use Plaintiff's lay understanding of the term as a substitute

for its legal meaning.  It should not be permitted, and Plaintiff's understanding of the term's

legal definition is irrelevant since he is not qualified to render a legal opinion in this case.

---

> **Deposition Testimony: (p.61:1-5)**
> Q.  Well, you realize that you were an exempt employee as a labor
>     manager?
> A.  No.  Well, let me rephrase that.  As a labor manager I realized that I
>     was not eligible for overtime.

*Response:*  Again, Plaintiff's testimony is consistent with his affidavit where he explains that he

did not work overtime in the capacity of a Regional Labor Manager since the job did not

require it.  Affidavit of Ron Wood, ¶ 17.

---

> **Deposition Testimony: (p. 67:18-25)**
> Q.  (BY MR. CVITANOVIC) I believe it's a yes/no question.  You
>     continued to work as a labor manager between October 2005 and
>     November 2006; isn't that right?
> MR. OVERSON:  Objection; asked and answered, vague, form
>                   of the question.
> THE WITNESS:  Yes.

*Response:*  The full testimony, set out on the same page, Wood Depo., p. 23:1-19, clarifies that

what the Plaintiff is testifying to is that after he was reassigned to Project Superintendent,

others in the company took over the duties of Regional Labor Manager and, from time to time,

those employees would contact the Plaintiff with questions.  So in a very limited sense,

according to the Plaintiff's deposition testimony, he did some Labor Management tasks in the

sense that he supported other employees who had taken over the job of Regional Labor

Manager.  The time spent, however, was *de minimus* and Defendant has failed to establish

anything otherwise.  Certainly a few telephone calls and emails are not enough for this Court

to conclude that Plaintiff was the full-time Regional Labor Manager—or that his wage was anything other than hourly.  It must be noted that the November 4, 2003 contract does not set forth that the terms only apply to Plaintiff in a particular capacity.  They apply to his employment generally, irrespective of what jobs he was assigned during the period.

---

**Deposition Testimony: (p. 73:10-23)**
Q. (BY MR. CVITANOVIC) But I wanted to make sure that I understand something.  Without invading the relationship, the attorney-client relationship and the discussions that you've had with your lawyer, do you claim that you are owed overtime before October 9, 2005 that you should get except for the statute of limitations?  Was part of your claim for overtime work from before October 9, 2005?  I'm just trying to understand if this is a statute of limitations issue or if there was just no claim at all.
A. That was the first time I was collecting -- that I would be looking for compensation for overtime is that date.

*Response:*  It isn't clear what point Defense counsel is making here.  The testimony is that Plaintiff is making a claim for all overtime he worked and was not paid since October 9, 2005.  As Plaintiff testified, he is looking to be compensated for overtime worked since October 9, 2005.

---

**Deposition Testimony: (p. 76:7-16)**
Q. Did Bob ever tell you that you were entitled to overtime?
A. No. I think in -- if I recollect, I'd even had some conversations with Alexa and that was where she had mentioned to me that labor managers were not eligible for overtime.
Q. Well, you knew that already, labor managers were not eligible for overtime, didn't you know that?
A. In the capacity of a labor manager.

*Response:*  Again, the deposition testimony is consistent with the affidavit, that Plaintiff understood that he was not entitled to overtime in his capacity as Regional Labor Manager

since that job did not require overtime. Additionally, Defendant's attorney assured Plaintiff and his counsel that he was not asking for a legal definition of the term "exempt" in the deposition, but rather Plaintiff's lay understanding. The surrounding events, as is clear from the testimony, were that Plaintiff was trying to get the company to pay his overtime hours due when it took the position that he was exempt. Plaintiff never agreed with Alexa that he was not eligible for overtime. Only that when he was working in the capacity of Regional Labor Manager, he didn't believe he was entitled to overtime and that belief, whether well founded in the law or not, was a lay opinion that has little if any relevance to the claims in this case since he is not claiming any overtime hours for days worked as a Regional Labor Manager. Plaintiff is purely claiming overtime hours for days worked as Project Superintendent. Frankly, under the law, had he worked overtime in the Regional Labor Manager capacity, he would have been eligible for overtime-pay since the express terms of his employment contract provided he was non-exempt. The agreement is fully integrated. It identifies the Plaintiff as non-exempt. It states that he would be compensated an hourly wage. And, there has never been a modification of the agreement. What Plaintiff believed before he hired legal counsel in terms of his legal rights is irrelevant. What is relevant is whether, under the law, he was exempt or non-exempt. And in that light, he is clearly non-exempt and therefore entitled to overtime pay.

---

**Deposition Testimony: (p. 78:3-9)**
Q. You would work more than 8 hours a day as labor manager.
A. There were times as a labor manager when I would get phone calls to support labor, find qualified resources, and have to make phone calls to people at their homes on a weekend or after hours as a labor manager

***Response:***  **The Plaintiff testified that this was a rare occasion and that he never worked in**

**excess of 40 hours in the week while performing these functions as a Regional Labor Manager.**

**Wood Depo., pp. 36:13 – 39:8; 77:1 – 78:9; Aff. of Ron Wood, ¶ 17.**

---

**Deposition Testimony: (pp. 119:20 –120:5)**

Q. So you didn't think it was necessary to write an e-mail
documenting the fact that you would then be entitled to overtime
and double time in addition to your normal pay?

A. Other than him telling me, we'll work something out, we'll work
something out.

Q. Then nothing got worked out?

A. That was a couple of the conversations that I had with Alexa also
and she had mentioned that labor managers were exempt, weren't
entitled to overtime.

***Response:***  **Plaintiff's testimony is that he put his immediate supervisor on notice that he was**

**claiming overtime.  There is nothing inconsistent between this testimony and his affidavit.**

---

**Deposition Testimony (pp. 123:19 – 125:10)**

Q. Exhibit 12, well, it starts on the second page where Alexa is asking
you about an agreement for Stew McDaniel on the vacation and
then you respond:  One week.  And then Alexa asks you: "What is
your agreement?"   Which brings us to your response Friday,
May 4th, 2007 at 4:20 in the afternoon.  Will you take a look at
this, please?

A. Yes.

Q. And you wrote that response?

A. Yes.

Q. And you are referring to your job duties at the time and also the
employee handbook and vacation policy; correct?

A. My interpretation when I had written this was per the employee
handbook which defined four weeks a year, not related to policy or
maximum banked hours, because I wasn't aware that there was an
expiration of vacation.

Q. Well, it's in the employee handbook, is it not?

A. I haven't seen the employee handbook.

Q. And you're stating your acceptance to those terms without
reservation.  Are you stating any reservation at all?

A.  Well, I say handbook definitions or four weeks per year.
Q.  And Kinetic's vacation policy is based on terms of service?
A.  Yes.
Q.  Length of service, I should say.
A.  Yes.
Q.  And your length of service entitled you to that four weeks.
A.  Per year.
Q.  Per year.
A.  Yes.
Q.  With a max, which you subsequently learned, with a max accrual of two times annual?
A.  I learned at the time from Alexa when I was stating that I was owed this many hours of vacation.

***Response:***  **Again, this is not testimony inconsistent with Plaintiff's affidavit.  He explains this testimony in his affidavit at paragraph 5, and thus, it falls within the <u>Kennedy</u> rubric that bars application of the rule that permits a district court to disregard a sham affidavit.  At this stage in the proceedings, the testimony and affidavit must be read in a light most favorable to the Plaintiff and, in that light, Plaintiff is entitled to the vacation pay he claims in his Complaint.**

---

**Deposition Testimony: (pp. 125:20 – 126:10)**

MR. CVITANOVIC: Well, I have an e-mail here from you to Sandra Kellam saying that you are an exempt employee in your own words. Take a look at it. (Exhibit 13 marked.)

THE WITNESS:  Okay. (Reviewing document)  Okay.

Q.  (BY MR. CVITANOVIC) You wrote those words, that you were an exempt employee; is that right?
A.  I was considered as exempt per Bob Portman and Alexa.
Q.  Well, so you are saying that KSI considers you exempt, but you didn't consider yourself exempt?
A.  Correct.

***Response:***  **There is no inconsistency that would permit applications of the sham affidavit rule.  In fact, Plaintiff's affidavit directly explains this testimony.  There is no issue here that would permit this Court to strike the affidavit submitted by the Plaintiff.**

---

**Deposition Testimony: (pp. 127:19 – 128:12)**

Q. (BY MR. CVITANOVIC) There's the time card. Let's compare that to the March 23, 2008 time card that you submitted with overtime. It's going to be Exhibit 8.

A. On the original time card probably had Saturday and Sunday for the truck; correct?

Q. I don't know that to be the case. I'm looking at the time card you submitted with Exhibit 13.

A. Yeah, with the overtime.

Q. With the time card that you submitted with the overtime.

A. Okay. This, I believe, was the week that I submitted overtime to Sandra and it was rejected because I got an e-mail from Bob Portman that stated that I was exempt, not eligible for overtime. And that is when I said well, if you are not going to pay me for overtime, then why are you going to tax me on the truck?

*Response:* **Again, the affidavit sets forth the explanation for this testimony and the exhibit. Defendant is trying to benefit from browbeating Plaintiff while he is in its employ. In a broader sense, the testimony supports Plaintiff's claim in the sense that it is just prior to the Plaintiff being transferred to the Southwest Region where very little overtime was required. The email exchange is clearly the result of the ongoing dispute between the Plaintiff and his employer. If the matter had, as the Defendant seems to suggest, been resolved long prior, then this exchange would never have taken place. The email and the testimony support the fact that Bob Portman had in fact been making statements to Plaintiff that his claims for overtime pay would be addressed, and ultimately they were not, which in the final analysis resulted in this litigation.**

**Deposition Testimony (p. 146:15-17)**

Q. So you're saying that you -- that the employee handbook did not apply to you?

A. My interpretation is it didn't.

***Response****:* **This too is consistent with Plaintiff's affidavit. He fully explains this testimony in that he was never provided a copy of the handbook, never signed anything acknowledging the application of the handbook to his employment, and that his understanding is consistent with the four corners of the November 4, 2003 agreement. The motion to strike is without foundation and should be denied.**

## III. CONCLUSION

Defendant heard what Defendant wanted to hear of Plaintiff's deposition testimony; not what was actually said. There is no sham affidavit. The motion to strike should be denied.

DATED this 20th day of December, 2010.

JONES & SWARTZ PLLC

By

DARWIN L. OVERSON
ERIC B. SWARTZ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of December, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Fredric V. Shoemaker
Thomas J. Lloyd
GREENER BURKE SHOEMAKER, P.A.
950 W. Bannock Street, Suite 900
Boise, ID 83702

H. Ann Liroff
Steven M. Cvitanovic
HAIGHT BROWN & BONESTEEL, LLP
71 Stevenson Street, 20th Floor
San Francisco, CA 94105

DARWIN L. OVERSON
ERIC B. SWARTZ