**Darwin Overson, ISB #5887**
**Eric B. Swartz, ISB #6396**
**JONES & SWARTZ** PLLC
1673 W. Shoreline Drive, Suite 200 [83702]
Post Office Box 7808
Boise, Idaho 83707-708
Telephone:  (208) 489-8989
Facsimile:  (208) 489-8988
E-mail:  darwin@jonesandswartzlaw.com
             eric@jonesandswartzlaw.com

**Attorneys for Plaintiff, Ronald Wood**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD WOOD, an individual,<br><br>                                   Plaintiff,<br><br>vs.<br><br>KINETIC SYSTEMS, INC., a California corporation,<br><br>                                   Defendant. | Case No. 1:09-cv-00579-CWD<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE [#44]** |

**A.     DECLARATION OF STEVE M. CVITANOVIC [#31-4]:**

*<u>Exhibit 7</u>*

It is apparent that Defendant understands the deficiency of foundation for Exhibit 7 to the Declaration of Steve M. Cvitanovic since the direction taken to lay a foundation for the exhibit was to submit a second affidavit from Michelle Koontz, rather than the more straightforward path of submitting the appropriate portions of Plaintiff's deposition.  The reason Defendant did not submit the deposition excerpts is that the deposition record shows that defense counsel sprung hundreds of pages of documents on the Plaintiff.  Dep. of Ron Wood, pp. 82:19 – 83:21; Declaration of Counsel in

Support of Plaintiff's Motion to Strike, ¶ 4. Most of the documents, including 212 pages of time cards that were marked as Exhibit 7 to Plaintiff's deposition, had not previously been disclosed.[1] Dep. of Ron Wood, pp. 82:22 – 83:4; Declaration of Counsel in Support of Plaintiff's Motion to Strike, ¶ 5. As Plaintiff pointed out during his deposition, the authenticity of many of the time cards was at best questionable. Dep. of Ron Wood, pp. 83:22 – 86:15. The exhibit included time cards with Otis Freeman's name instead of Plaintiff's. Dep. of Ron Wood, p. 83:22-24. Plaintiff clearly pointed out that he could not testify that they were copies of the time cards he submitted:

> Q. They all have your name at the top, but I am asking you: Are they all your time cards then?
> A. Yes, they are all my time cards, but I don't know for a fact that I submitted them. Any of these that have signatures of various people –
> Q. Other than Bob Portman?
> A. Well, they're all different, like Chris Bunning, you've got Jewell Earhart on some, you've got some that don't have any signatures, you've got other ones that have the signatures of Chris Keller, with Jacobs.
>     I don't know for a fact that I submitted those because I don't know how I would have ever got the time cards with their signatures on them.
> Q. I will double check on whether these are from the laptop, from the hard drive that was on the laptop that you used, and there is also time cards that were submitted. It's possible I just grabbed the wrong batch. And maybe there is another batch of the time cards from your hard drive. I'll double check on that. I'll do that today.

Dep. of Ron Wood, pp. 89:21 – 90:19. Defense counsel never came back to the issue of whether Exhibit 7 was in fact the time cards submitted by the Plaintiff, or where in fact they came from. Ms. Koontz' affidavit, paragraph 7, makes the assertion that "Exhibit 7 to Plaintiff's deposition comprise true and correct copies of a collection of 'Union Time Cards' submitted by Plaintiff when he

---

[1] Inexplicably, Ex. B to the Declaration of Mr. Cvitanovic is missing 34 pages of time cards that are part of the original 212 pages of time cards attached to the Deposition of Ron Wood as Exhibit 7.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE – 2

was employed as a Regional Labor Manager." [#49-1] However, Ms. Koontz' affidavit does not explain the authentication issues that defense counsel acknowledged on the record during the deposition. Her affidavit states that she gathered the time cards in "collaboration with the payroll clerk and other employees of KSI to obtain the time cards kept by KSI, as submitted over the years from Mr. Wood," but she provides no testimony to link the time cards she "obtained" to those contained in Exhibit 7 to the Plaintiff's deposition. Ms. Koontz' assertion that the time cards attached to Mr. Cvitanovic's affidavit are time cards submitted by the Plaintiff is without a proper foundation, even for summary judgment purposes. The only grounds offered by Ms. Koontz and Mr. Cvitanovic for the assertion that they are time cards submitted by the Plaintiff is the hearsay of the affiants that the documents are the time cards "submitted" by Mr. Wood.

Further still, Ms. Koontz' own affidavit establishes that she and "others" obtained the time cards. The affidavit does not establish who the others were or whether they or Ms. Koontz were the custodians of the records. *See* Aff. of Koontz, ¶¶ 7-8. [#49-1]

Without a proper foundation that the documents are in fact the time cards submitted by the Plaintiff, the admissibility element of authentication is missing. As such, Exhibit 7 cannot be considered for the purposes of Defendant's motion for summary judgment. Plaintiff's motion to strike should therefore be granted.

### *Exhibit 16*

Defendant has now submitted a second affidavit from Ms. Koontz purporting to establish Exhibit 16 to the Plaintiff's deposition as a true and correct copy of "KSI's vacation policy applicable to all employees of KSI, including Mr. Wood." 2nd Aff. of Koontz, ¶ 9 [#49-1]. However, her statement that the policy document was applicable to all KSI employees including the Plaintiff is conclusory and is merely a statement of fact as Defendant argues for it. That is, Defendant offers this

affidavit in hopes that the Court takes at face value Ms. Koontz' assertion that the vacation policy attached as Exhibit 16 was applicable to the Plaintiff.  However, Plaintiff testified in his deposition and swore to in his affidavit that he was never informed that that policy applied to him as a term of his employment.

> MR. CVITANOVIC:  I'm going to show you the vacation accrual.
> (Exhibit 16 marked.)
> Q. (BY MR. CVITANOVIC)  Just let me know when you're ready.
> A. (Reviewing document.)  Okay.
> Q. So I want to focus on the language after the three columns for length of service, max annual vacation hours accrued, and accrual rate of vacation.  So you fell into the 15 years or more category with 160 hours.  Do you see that:
> A. Yes.
> Q. And the next part of the documents says: "You can accrue vacation time up to a maximum of twice your annual accrual rate.  Once your unused vacation balance exceeds this maximum, you cannot accrue any additional time until you take vacation time."
> Are you saying that you were completely unaware of that policy during the entire length of your employment at Kinetic Systems?
> A. I don't remember ever seeing this document.
> Q. So you're saying that you were totally unaware of the policy or the document?
> A. I was unaware of the document, I'm unaware of it being related to nonexempt employees, and unaware that this supersedes the verbiage in my offer letter.
> Q. Well, were you aware of the language but you thought it only applied to exempt employees?
> A. I was not aware of this specific language, no.
> Q. Were you aware of the language in general?
> A. No.

Dep. of Ron Wood, pp. 180:10 –181:20; Aff. of R. Wood, ¶¶ 4-5.  The second affidavit of Ms. Koontz may establish a foundation for Exhibit 16 as a vacation policy of KSI applicable to some employees, but it does not establish that it was a policy applicable to Mr. Wood's employment.  Her affidavit creates a material issue of fact that must be resolved by the fact finder.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE – 4

### *Exhibit 19*

The objection to Exhibit 19 to the Plaintiff's deposition is withdrawn as the Defendant has established a foundation for the exhibit.

### *Exhibit 20*

The objection to Exhibit 20 to the Plaintiff's deposition is withdrawn as the Defendant has established a foundation for the exhibit.

### *Exhibit 21*

Ms. Koontz' affidavit does not address the foundational issues raised by Plaintiff's Motion to Strike Exhibit 21 to the Affidavit of Steve M. Cvitanovic.  When Mr. Wood was presented with Exhibit 21 in his deposition, he clearly stated that he had not seen the document before the deposition:

> (Exhibit 21 marked.)
> Q. (BY MR. CVITANOVIC)  Have you seen these before, Exhibit 21?
> A. No, I haven't seen these before.
> Q. Is that your electronic signature on these?
> A. I don't remember seeing these.
> Q. Does that appear to be your electronic signature?
> A. Yeah.
> Q. Do you know what the purpose of this document is?
> A. Basically because time need to be approved by Jacobs.
> Q. You've seen this type of form before, right?
> A. Not specifically, no, but...
> Q. You had seen a document before entitled Authorization for Overtime in some way, shape or form?
> A. Yes.
> Q. But for this project you're saying that you've never seen an authorization for overtime.
> A. I know that there was, the office was compiling the requisition that went over to Jacobs for requesting overtime, but I don't remember submitting to Jacobs.
> Q. Have you ever seen any document from Jacobs authorizing overtime on Coors?
> A. I see the signed time cards from Jacobs, those are the ones that I was showing you before that had Chris Keller and some of those people with Jacobs that was approving time cards.  They would

> come over to the trailer and they'd go through the time cards and they'd sign them.
> Q. Those are for the time cares that -- those were the time cards that did not have overtime on them, did not have overtime; right?
> A. Well, they were signing all time cards.
> Q. I know. But the ones that you're referring to are the time cards that did not have overtime.
> A. On my time cards.
> Q. Yes.
> A. But they were signing everyone's time cards. They were reviewing everyone's time cards on that project.
> Q. And did they tell you or did you see a document where they were authorizing -- was the authorization for overtime simply them signing the time cards?
> A. That was their approval of the overtime that was requested to work to maintain schedule.
> Q. But how do you know that you were approved to work the overtime two years or a year after the fact after you claim you did it?
> A. Jacobs demanded the supervision management be there supervising at all times when labor was on the site, project demands of having the superintendent on site when they were working overtime or working in general, all hours.
> Q. Did you ever tell anybody from Jacobs that you were billing overtime on the project?
> A. No.
> Q. Is that something that you think they'd want to know?
> A. They would if they were getting charged for it, yes. I did have conversations with Chris Keller, that Chris Keller with Jacobs over all the people with Jacobs was getting paid overtime and they were approving my time cards and didn't understand why I was not getting overtime.

Dep. of Ron Wood, 188:21 – 191:17. Defendant has not even attempted to lay a proper foundation for Exhibit 21, and this Court should strike that portion of Exhibit B of Mr. Cvitanovic's Declaration that includes Exhibit 21 of the Plaintiff's deposition.

**B.    DECLARATION OF MICHELLE A. KOONTZ [#31-8]:**

*<u>Paragraphs 5 through 11</u>*

Defendant appears to agree that the parol evidence contained in paragraphs 5 through 11 cannot be considered by this Court in ruling on the state law claims other than Plaintiff's claim to vacation

wages.  No opposition argument was put forth by Defendant against Plaintiff's argument that paragraphs 5 through 11 should not be considered as to the state law wage claims, and therefore this Court should not consider those paragraphs when ruling on Defendant's motion for summary judgment as to those claims.

Defendant does argue that parol evidence should be considered by this Court when interpreting Plaintiff's employment contract as it relates to vacation pay.  Specifically, Defendant argues for the first time that the contract is ambiguous as to vacation time since it does not state vacation days on a per year basis.  However, Defendant's argument is not only untimely but incorrect as a matter of law.  First, it should be recognized that the terms of the contract must be "construed strongly against" KSI as the party who prepared the contract.  *Chapman v. Haney Seed Co.*, 102 Idaho 26, 29 (1981).  Second, parol evidence cannot be admitted for the purposes of contradicting, varying or adding terms to the written contract.  *Miller Constr. Co. v. Stresstek, a Div. of L.R. Yegge, Co.*, 108 Idaho 187, 190 (1985).  Interpreting the contract provision governing vacation as being an annual amount of vacation is not inconsistent with the terms of the contract and is in accord with the ordinary meaning of such language in employment contracts.  *See Bilow v. Preco, Inc.*, 132 Idaho 23, 27-8 (1998).

> The court's objective in construing a contract is to ascertain and give effect to the intent of the parties. *George v. University of Idaho*, 121 Idaho 30, 35, 822 P.2d 549, 554 (Ct. App. 1991).  "If the contract is clear and unambiguous, the court gives effect to the language employed according to its ordinary meaning." *Dille v. Doerr Distributing Co.*, 125 Idaho 123, 125, 867 P.2d 997, 999 (Ct. App. 1993).  In construing unambiguous terms of a contract, the court ascertains the parties' intent from the language contained in the contract. *George*, 121 Idaho at 35, 822 P.2d at 554.  If the contract is ambiguous, extrinsic evidence may be considered to discern the true intent of the parties. *Dille*, 125 Idaho at 125, 867 P.2d at 999; *International Eng'g Co. v. Daum Indus., Inc.*, 102 Idaho 363, 365, 630 P.2d 155, 157 (1981).  Therefore, unless the employment agreement is ambiguous, it is improper to consider extrinsic evidence.

*Id*. Consideration of the KSI vacation policy would violate the parol evidence rule since there is no evidence that Plaintiff agreed to the terms of any employee manual that would alter the terms of his employment agreement. Further, to interpret the vacation pay language in the contract as meaning that it was four weeks vacation for the entire duration of Plaintiff's employment would be patently unreasonable. The language used is not ambiguous since the only reasonable interpretation of the language is that it is vacation time accruing annually. Other interpretations advanced by Defendant are unreasonable and would make the contract terms nonsensical, which is not permitted under the law. *See Potlach Educ. Ass'n v. Potlach School District No. 285*, 148 Idaho 630, 633 (2010) ("A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical.").

Defendant's position is that Plaintiff "cannot have it both ways" in terms of parol evidence being "available only for the Plaintiff's benefit." However, Plaintiff does not advance parol evidence at all. Rather, Plaintiff merely seeks to have the Court interpret the language of the agreement according to its ordinary meaning, without reference to extrinsic evidence such as that offered by the Defendant. Here, Defendant offers parol evidence for the improper purpose of "contradicting, varying or adding terms to the written contract" which is not permitted. *Bilow,* 132 Idaho at 27-8; *see Swanson v. Beco Const. Co., Inc*., 145 Idaho 59, 63-64 (1998) ("A contract is not rendered ambiguous on its face because one of the parties thought that the words used had some meaning that differed from the ordinary meaning of those words.").

The Court is to discern the intent of the parties from the plain language of the contract, giving effect to its language according to its ordinary meaning. Here, to read the vacation pay provisions in any other way than setting an annual vacation benefit would violate the fundamental rules for contract interpretation as set out by the Idaho Supreme Court.

Similarly, Defendant seeks the admission of parol evidence to alter the terms of the fully integrated agreement in order to squeeze Plaintiff's employment with the Defendant into the highly paid executive exemption to the requirements of FLSA. Contrary to the position taken by the Defendant, Plaintiff's position is not that Defendant cannot offer evidence of what Plaintiff actually did while working on the job at KSI. Rather, Plaintiff's position is that Defendant cannot offer extrinsic evidence to contradict, alter or add to the terms of the employment agreement that clearly state that Plaintiff was to be paid an hourly wage. Doing so is not permitted under Idaho law. *Bilow,* 132 Idaho at 27-8; *Swanson*, 145 Idaho at 63-64.

The words setting out that Plaintiff would be Non-Exempt and paid an hourly wage are not rendered ambiguous merely because KSI may have "thought that the words used had some meaning that differed from the ordinary meaning of those words." The ordinary meaning of those words is quite simple.

The ordinary meaning of "Non-Exempt" is that Defendant was agreeing to pay Plaintiff as a non-exempt employee for purposes of FLSA and state wage laws. To permit the Defendant to offer extrinsic evidence contradicting the ordinary meaning of the language of the agreement would run afoul of the parol evidence rule.

The ordinary meaning of "hourly wage" is that Defendant was agreeing to pay Plaintiff an hourly wage. Again, permitting the Defendant to offer extrinsic evidence contradicting the ordinary meaning of the language of the agreement would run afoul of the parol evidence rule.

### *Paragraphs 16 and 19*

Ms. Koontz' second affidavit has now provided a sufficient basis for Exhibit 16 of the Plaintiff's deposition – the KSI vacation policy. Plaintiff has no objection to Exhibit 16 other than it is irrelevant and is impermissible parol evidence offered to contradict, add to or alter the terms of the

agreement.

The KSI vacation policy is irrelevant because Defendant has not, and cannot, offer evidence of the Plaintiff agreeing to be bound by the terms of the KSI vacation policy. The evidence only becomes probative if this Court finds that, as a matter of law, the KSI vacation policy was incorporated into Plaintiff's employment contract.

As for paragraph 19 to the affidavit of Ms. Koontz, the statements offered therein and the report are clearly hearsay offered for the truth of the matter asserted. The only exception being that KSI decided to terminate Plaintiff's employment. As such, the evidence should not be considered for purposes of the Defendant's summary judgment motion.

**C.     MISTAKE WAS NOT RAISED AS AN AFFIRMATIVE DEFENSE IN DEFENDANT'S ANSWER, AND IS THEREFORE WAIVED**

Defendant claims that KSI has contended from the inception of this case that the use of the term "Non-Exempt" in the employment contract was a mistake. However, the citation Defendant provides this Court is to the Declaration of Michelle A. Koontz, #31-8, paragraph 10, which was filed on October 12, 2010—over four months after the deadline for amending the Answer. The affirmative defense of mistake, like that of the statute of limitations, must be raised in the answer to the complaint or it is waived. It is fundamentally unjust to permit the Defendant to wait and sandbag the Plaintiff with these affirmative defenses, only revealing them after the deadline for amending the complaint and answer has passed. The word "mistake" simply does not appear anywhere in Defendant's answer to the complaint. As such, mistake is an affirmative defense not available to the Defendant at this late stage in the proceedings.

**D.     CONCLUSION**

For the above stated reasons, Plaintiff's Motion to Strike should be granted as set forth herein.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE – 10

DATED this 31st day of January, 2011.

              JONES & SWARTZ PLLC


              By  /s/ Darwin L. Overson
                 DARWIN L. OVERSON
                 ERIC B. SWARTZ


### CERTIFICATE OF SERVICE

 I HEREBY CERTIFY that on this 31st day of January, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

    Fredric V. Shoemaker
    Thomas J. Lloyd
    GREENER BURKE SHOEMAKER, P.A.
    950 W. Bannock Street, Suite 900
    Boise, ID 83702

    H. Ann Liroff
    Steven M. Cvitanovic
    HAIGHT BROWN & BONESTEEL, LLP
    71 Stevenson Street, 20th Floor
    San Francisco, CA 94105


             /s/ Darwin L. Overson
              DARWIN L. OVERSON
              ERIC B. SWARTZ